## In the matter of the division of North Whitehall Township.

*" Three weeks' notice before the time of meeting"* construed.—*Election by the people, on question of dividing township, necessary.*

1. Where commissioners appointed on an application for the division of a township, were ordered to "give notice of the time and place of meeting in one English and one German newspaper," "three weeks before the time of meeting," three successive insertions made within less than three weeks before the meeting, are not a compliance with the order.

2. Under the Act of 14th March 1857, it is the duty of the Court of Quarter Sessions to order an election when a return has been made favourable to a division of a township.

CERTIORARI to the Quarter Sessions of *Lehigh county.*

This was a proceeding in the court below, for the division of North Whitehall township.

April 10th 1862, two petitions were presented, praying for the appointment of commissioners to divide the township of North Whitehall. On the same day the court appointed commissioners "to inquire into the propriety of granting the prayer of the petitioners, and who or any two of them were to make a plot or draft of the said township, and the division line proposed to be made," &c., and directed them to give notice of the time and place of meeting in one English and one German newspaper, in Lehigh county, three weeks before the time of meeting.

An order of court reciting the presentation of the petition first mentioned, issued to the commissioners, directing them, among other things, "to give notice of the time and place of meeting in one English and one German newspaper, published in Lehigh county, three weeks before the time of meeting."

August 15th 1862, the report of commissioners was filed, setting forth, *inter alia*, that they had met May 26th 1862, and divided the township of North Whitehall, in accordance with the order of the court, and that, in their opinion, it was proper that the prayer of the petitioners be granted. Same day, the court made an order confirming the report, unless exceptions be filed on or before the first day of the next term of court. October 29th 1862, exceptions were filed, among which were the following, designated as the third and seventh respectively, viz.: "The report does not state in what manner, nor during what time, notice was given of the time and place of meeting of the commissioners." "The order of court directs the commissioners to give three weeks' notice of the time and place of meeting in one English and one German newspaper; this order was not complied with."

Depositions of witnesses were taken in behalf of exceptants, showing, *inter alia*, that notice of the time and place of meeting

[In re North Whitehall Township.]

was first "published in one English and one German newspaper," May 7th 1862, nineteen days before the day of meeting.

November 13th 1863, the ."exceptions were dismissed, and report of commissioners confirmed" by a majority of the court (the president dissenting), without ordering "a vote of the qualified electors of said township to be taken on the question of a division thereof," and fixing a day for the holding of such election as required by sections 1st and 2d, Act of the 14th March 1857; which were the errors assigned here by the exceptants.

*Marx & Runk*, for appellant.—1. The question simply is, whether nineteen days is three weeks' notice, or, in other words, whether nineteen days are equal to twenty-one days. Such a decision does not fall far short of an abuse of the privilege which a court has to interpret its own rules. It is not even a question of interpretation of a rule of court, but rather as to the signification of the English words "three weeks," which clearly mean twenty-one days. As the order was not that notice should be given "during three successive weeks," but "three weeks before" the meeting, we aver, that had the notice been inserted in one English and one German newspaper, published in Lehigh county, but once, twenty-one days before the meeting, this would have been in strict compliance with the order of court; and if this position be tenable, it follows, as a corollary, that any number of insertions in such papers inside of twenty-one days immediately preceding the meeting, would not have been sufficient. Had even the order been, that the notice should be given "once a week during three successive weeks previous," &c., which is the language of the Act of Assembly regulating the publications of sheriffs' sales, three full weeks' notice would have been necessary. See Francis v. Norris, 2 M. 151; Wallace's Estate, 7 Pittsburgh Leg. Int. 401; Early v. Doe ex d. Homans, 16 Howard 610. Williams v. Moore, Phila. District Court, May 26th 1849, reported in Troubat & Haly's Practice, vol. 1, p. 807, which seems to be based chiefly upon Stover's Appeal, 3 W. & S. 157, and Bachelor v. Bachelor, 1 Mass. 256, decides only that it is not necessary that there should be an interval of just one week between each publication, but that an insertion each week is in compliance with a direction that the publications be successive. But whatever may be the construction upon the statute referred to, the order of the court in this case is in such marked contrast with the phraseology used in the statute, that a construction of the one can have no bearing on the other.

It may be argued that the court below is the only proper judge of its own rules; but the contrary is expressly held in Reintzheimer v. Bush, 2 Barr 88; Hudson v. Reel, 5 Id. 279; Ankrim v. Sturges, 9 Id. 275.

[In re North Whitehall Township.]

2. Section 1, Act of 14th of March 1857, Purd. Dig., p. 204, pl. 19, provides that "in proceedings to divide any township in this Commonwealth, it shall be the duty of the Court of Quarter Sessions of the proper county, when a return has been made by commissioners appointed under the provisions of the act to which this is a supplement, favourable to a division, to order a vote of the qualified electors of said township to be taken on the question of a division thereof," and section 2 of the same act further directs "that it shall be the duty of the said courts, upon the return being made to them as aforesaid, to fix a day certain upon which the election officers of the township proposed to be divided shall hold an election," &c. Neither of these directions were complied with in this case, and the omission is fatal to the proceedings. This principle is laid down in Road Case, 3 W. & S. 559, in which it is held that the omission of the Court of Quarter Sessions to fix the width of a public road is fatal to the proceedings, and that the fixing of the width is an act to be done at the time when report is confirmed. On the same point we cite Road Case, 4 W. & S. 39, Pitt Township Road, 1 Barr 356, and Norriton and Whitpain Road, 4 Id. 337.

*S. A. Bridges*, for appellees.—1. The order as to notice was substantially complied with. It is true, that the first publication of the notice was on the 7th of May 1862, and the time of meeting was on the 26th of the same month. In a case like the present the law knows no fractions of a day. If not, the 7th of May was the first, and one day's notice, if we are right in including this day in calculating the number of days.

See 3 Durnford & East's Rep. 333, top paging, Castle *et al. v.* Burditt *et al.*, 5 Harris 48, Barber *v.* Chandler, under which we claim the right of including the seventh day in calculating the time. Have we a right also to include the 26th, the day of meeting? The counsel for appellant admits it in the calculation contained in his argument. Starting out, then, with the 7th and 26th inclusive, we have twenty days instead of nineteen. Was it necessary for any purpose whatever in this case to advertise another day? Was not the order substantially complied with by three insertions in the newspapers in the three weeks prior to the time of meeting? May not the present case be likened to sheriffs' sales, the statute requiring notice "once a week during three successive weeks previous to such day of sale"? 1 Troubat & Haly 795. Is the Act of 1836 less imperative to advertise for twenty-one days, than the order of the court in this case? Are not the words "during three successive weeks," as strong as the words "three weeks' notice"? In the case of Williams *v.* Moore, referred to in 1 Troubat & Haly 807, which

overrules Francis v. Morris, cited by appellant, it has been so decided.

The case of Bachelor v. Bachelor, 1 Mass. 256, is in point. There an order was made by the court that a certain notice should be published in a newspaper specified three weeks successively. The notice was inserted in the paper, which was issued from the press twice a week; first in the paper of Saturday, June 30th, second, Saturday, July 7th, and third, Wednesday, July 11th. And it was held that the order had been substantially complied with. See also Stoever's Appeal, 3 W. & S. 154.

Even the exceptant does not complain of the want of notice. It is not in his exceptions, that he did not know of the time and place of meeting of the commissioners; for he did know it, as was proved by one of the commissioners. The associate judges, who made the order and decided the question, knew what the order meant, and their construction should be respected. See Umberger v. Gearing, 8 S. & R. 163; Alexander v. Alexander, 5 Barr 278; Ankrim v. Sturges, 9 Id. 275; Erwin v. Leipert, 5 W. & S. 105. The associate judges are capable of giving a just construction to their own rules and own orders, of knowing what the practice has been in their court in relation to the publication of their orders, and also of knowing when their rules and orders have been substantially complied with.

2. "As to not ordering a vote of the qualified electors of said township on a question of a division thereof, and fixing a day for the holding of such election." The Act of 1834, Purd. 204, pl. 16, gives authority to the several Courts of Quarter Sessions, "within their respective counties, to erect new townships, to divide any township already erected, and to alter the lines of any two or more adjoining townships."

The Act of 1854, pl. 18, says: "In all cases of proceedings under the 14th section of the Act of which this is a supplement for any of the purposes therein mentioned, the respective court shall direct a second commission or review, for the same purposes, on the petition of a majority of the voters of the township or townships affected by said proceedings: Provided, that such petition shall be presented to the court at or before the second term thereof, after the final confirmation of the report of the first commission or review."

The report was confirmed at the November Sessions 1863, and under the Act last cited, time was given until the next April Session 1864, for a majority of the voters of the township to present their petition for a second commission or review. This act is not repealed by the Act of 1857, cited by the counsel for appellant. It does not affect the Act of 1854, but allows additional proceedings to be had, to wit, to have a vote of the qualified electors of the township ordered on the question of election, and

[In re North Whitehall Township.]

a day fixed for the election. But when is this to be done? Not at the confirmation of the report, as has been contended, because this would interfere with the right of petition for a second commission or review; but only when time has been given under the Act of 1854, for the presentation of a petition for a second commission or review, to wit, until the second term after the confirmation of the report. Only when the rights under the Act of 1854 have been exhausted, can the rights under the Act of 1857 be resorted to. The counsel has likened this to road cases, but the law in reference to them is very different. The approval and fixing the breadth of the road must be one act, or concurrent acts. But the phraseology of the law in relation to the division of townships is very different. " In proceedings to divide any township in this Commonwealth, it shall be the duty of the Court of Quarter Sessions of the proper county, when a return has been made by commissioners," &c.

The words "when a return has been made" do not imply a return made at any particular time, but rather at an indefinite time. Nor does the act require that the approval of the commissioners' report, and the ordering an election, should be one act, or concurrent acts. At the time of approval, the court might not be asked to order an election, and would not order it without being asked. Neither would the court order an election of officers until the question of division, either by the act of the commissioners or by an election, had been settled.

The opinion of the court was delivered, April 2d 1864, by Strong, J.—The order of the court prescribing the notice to be given of the time and place of meeting of the commissioners, required it to be given " three weeks before the time of meeting." It had reference not to the number of insertions in the newspapers of the county, nor to any intervals between insertions. Its plain purpose was to give to all persons interested in the proposed division of the township, a defined period, before the action of the commissioners, to prepare for their meeting. This period was fixed at three weeks. The mode of giving notice was also directed, but not in such a way as to shorten the defined period. The question presented then is, whether a notice given only nineteen or twenty days at most, was a compliance with the order of the court. And clearly it was not. The order was not for notice "during three successive weeks," nor "by a given number of insertions in newspapers in successive weeks," but it required a certain duration of time before the time of meeting. It is easy to conceive how the difference may have been important. It may well have been intended to enable absent inhabitants of the township to return in season to interpose objections to the proposed division, while the commissioners were upon the.

[In re North Whitehall Township.]

ground. It may have been to give full time for the collection of evidence to show that the proposed division was, or was not, advisable. Whatever the reason for making the order was, until it was complied with the commissioners were not authorized to act. We cannot hold that parts of three weeks are the same thing, or substantially the same thing as three weeks, and consequently the failure to give three full weeks' notice was fatal to the report. See Early v. Homans, 16 How. 610.

It is urged by the appellees that the court below is the best judge of its own rules, and that as that court has decided that a notice of nineteen days was a compliance with its order to give three weeks notice, we should not interfere. It is true that great respect is due to the construction given by a subordinate court to its rules of practice. This order, however, can hardly be called a rule of practice. If it could, it has never been understood that the decision of the lower court in such a case, is conclusive upon us. The contrary has more than once been declared. And when rights of parties rest upon the observance of court rules and orders, as they do in this case, there is every reason why we should hold the court to them. This is especially true when the rules affect the public, where a new political division of the state is projected. We feel constrained, therefore, to reverse the order of the Quarter Sessions for the reason that the commissioners were not empowered to act until after three full weeks' notice of the time and place of their meeting had been given.

The second assignment of error it is not important now to consider. But as the case goes back, probably for a new commission, we will say that by the Act of 14th of March 1857, it is made the duty of the court to order an election when a return has been made favourable to a division of a township. The court cannot confirm such a return absolutely, though they may pass upon, and sustain or dismiss exceptions, before referring the matter to a popular vote. The discretion of the court has been transferred to the people.

The order of the Court of Quarter Sessions is reversed, and the record is remitted.

AGNEW, J., was absent at Nisi Prius when this case was argued.