# Commonwealth ex rel. Attorney General *v.* King, Secretary of Commonwealth, Appellant.

*Constitutional law — Constitutional amendment — Advertising amendment—Municipal election—Acts of July 7, 1913, P. L. 693, and April 3, 1923, P. L. 55.*

1. Under the Act of April 3, 1923, No. 34, amending the Act of July 7, 1913, P. L. 693, the secretary of the Commonwealth may advertise prior to a municipal election in an odd numbered year a proposed constitutional amendment, which had been agreed to by the legislature a second time.

2. The words "general election" which appear only in the early part of article XVIII, section 1, of the Constitution, have no connection with the voting to take place after the amendment has been twice approved by the legislature. ·

3. The purpose of the advertisement after the amendment has first been approved and prior to the next general election is to give the electors opportunity to be advised concerning the amendment and to ascertain the policy of candidates who will have to pass upon it when it comes before the legislature a second time.

4. The purpose of the second advertisement is to advise the electors themselves, so that they may vote intelligently and directly upon the proposed amendment.

Submitted June 23, 1923. Appeal, No. 3, May T., 1924, by defendant, from order of C. P. Dauphin Co., Commonwealth Docket, 1923, No. 44, awarding peremptory mandamus, in case of Commonwealth ex rel. George W. Woodruff, Attorney General, v. Clyde L. King, Secretary of the Commonwealth. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Affirmed.

Petition for peremptory mandamus. Before HARGEST, P. J.

The opinion of the Supreme Court states the facts.

Mandamus awarded. Defendant appealed.

*Error assigned* was order, quoting it.

*George W. Woodruff,* Attorney General, for appellant.
—The clarity with which a "general election" is defined
as one which "shall always be held in an even numbered
year" and "municipal elections" are distinguished as
those to be held on "the Tuesday next following the first
Monday of November in each odd-numbered year," takes
away the necessity for general attempts to find out what
is meant by the expression "general election" in article
XVIII.

*John H. Fertig,* for appellee, cited: Com. v. Bethle-
hem, 248 Pa. 581; Com. v. Griest, 196 Pa. 396.

Opinion by Mr. Chief Justice Moschzisker, June 23,
1923:

This case arises on a petition for mandamus and de-
murrer thereto, the question presented being whether a
proposed constitutional amendment,—providing for a
bond issue to continue the road program of the Common-
wealth,—which has been agreed to by the legislature a
second time, may be published prior to an election held
throughout the State in an odd-numbered year, such elec-
tions being technically termed "municipal" and those
held in even-numbered years alone being called "general."

Article XVIII, section 1, of the Constitution, relating
to amendments, provides that, after a proposed amend-
ment has been agreed to the first time by the two houses
of the legislature, "the secretary of the Commonwealth
shall cause the same to be published three months before
the next general election, in at least two newspapers in
every county in which such newspapers shall be pub-
lished; and if, in the general assembly next afterwards
chosen, such proposed amendment......shall be agreed
to,......the secretary of the Commonwealth shall cause
the same again to be published in the manner aforesaid;
and such proposed amendment......shall be submitted
to the qualified electors of the State in such manner and
at such time, at least three months after being so agreed

to by the two houses, as the general assembly shall prescribe."

This last clause solves the question at issue, for the general assembly, by Act of April 3, 1923, P. L. 55, prescribed that, unless it should provide otherwise in respect to any particular proposed amendment (and here it did not), constitutional amendments should thereafter be submitted to the qualified electors for their approval "at either the municipal or general election" occurring at least three months after the date when the amendment in question "shall have been agreed to for the second time by [the legislature], as provided in article XVIII, section 1, of the Constitution."

The Act of 1923 is attacked on the ground that the Constitution requires the submission of proposed amendments at a general election, occurring in even-numbered years, and therefore prohibits such submission at an election held in an odd-numbered year; but this contention is not sound. The words "general election," which appear only in the early part of article XVIII, section 1, have no connection with the voting to take place after the amendment has been twice approved by the legislature. As is properly said by the court below, "If the contention of the respondent be sustained, the provision that the amendment is to be submitted to the electors at such time as the general assembly shall prescribe, is meaningless, because, if it can only be submitted at a general election, there would be no point in conferring upon the general assembly the power to prescribe the time at which the amendments shall be submitted." We have neither the right nor the inclination to eliminate that clause from the Constitution.

There is a real reason for requiring the advertisement prior to the general election when the legislature has still to pass on a proposed amendment. Members of the general assembly are chosen only at general elections; hence, as the opinion under review well says, "The purpose of the [constitutional] requirement of publication

three months before the next general election [following the first legislative agreement to the proposed amendment (this being "the only place where the phrase 'the general election' appears")] was to give the electors an abundant opportunity to be advised concerning the proposed amendment and to ascertain the policy of candidates for the general assembly to be 'next afterwards chosen,' because they would have to pass upon the proposed amendment when it came before the general assembly a second time." This, as noted by the court below, is suggested by us in Commonwealth v. Griest, 196 Pa. 396, 415.

On the other hand, when a proposed amendment reaches the stage of the present one, it is evident no such reason as that above stated applies, for, to again quote from the opinion under review, "the purpose of the second publication [which is the one here in question] is to advise the electors themselves, so that they may vote intelligently [and directly] upon the proposed amendment," and "this published information would have the same effect, if made before a municipal election, as if made prior to a general election." The constitutional· provision calling on the secretary of the Commonwealth to cause the second notice "to be published in the manner aforesaid" means that the required notice must appear "in at least two newspapers in every county" in which that course is possible, and not that it must be published prior to a general election; its appearance in the proper publications three months before the day set for the electorate to pass on the proposed amendment is sufficient.

It is clear, both from the language of the Constitution, which alone would be controlling, and from the manifest purpose of its several provisions, as already pointed out, that those in authority have the right to submit proposed amendments to the electorate for approval "at such times," at least three months after their adoption by the legislature, as that body may ordain; hence, in view of

the recent act, supra, the court below did not err in directing the Secretary of the Commonwealth to advertise the present amendment for the election of November, 1923.

Since briefs were sent to us in advance of the date set for argument, and the case was submitted without oral presentation, we are able to comply with the request of the state officials for the prompt filing of an opinion.

The assignment of error is overruled and the judgment is affirmed.