Commonwealth ex rel. Attorney General, Appellant, *v.* Beamish.

Argued September 26, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Douglass D. Storey,* for appellant.

*Wm. A. Schnader,* Attorney General, for appellee.

PER CURIAM, September 26, 1932:
And now, September 26, 1932, the order of the court below is reversed and it is ordered that Richard J. Beamish, secretary of the Commonwealth, advertise the pend-

ing constitutional amendments once a month for three months, in at least two newspapers in every county in which such newspapers shall be published, preceding the next general election, and not oftener, in order to conform with the requirements of article XVIII of the Constitution of the Commonwealth.

The secretary having advertised the proposed amendments in the month of August, this order will be complied with if advertisement is made in the months of September and October following.

SUPPLEMENTAL OPINION BY MR. CHIEF JUSTICE FRAZER, November 28, 1932:

Supplemental to what was said in our Per Curiam opinion filed September 26, 1932, we deem it advisable that further reference should be made to the question involved in this appeal than was given in that opinion, which was filed the day of the argument to enable the secretary of the Commonwealth to comply with the law.

The purpose of this proceeding was to obtain an interpretation of section 1, article XVIII, of the Constitution of the Commonwealth. From the agreed statement of facts it appears that William N. Hardy, on behalf of the Pennsylvania Newspaper Publishers' Association, filed with the attorney general a petition requesting that an alternative writ of mandamus be issued in the name of the Commonwealth, commanding the secretary of the Commonwealth to advertise fourteen proposed constitutional amendments once a week during each week in two newspapers in each county of the Commonwealth, for three months immediately preceding the next general election. On August 10, 1932, the attorney general presented his petition to the Court of Common Pleas of Dauphin County for the desired writ, and by agreement of counsel the court awarded an alternative writ returnable forthwith. The attorney general thereupon withdrew his appearance for petitioner, appeared for defendant, and filed a demurrer to the petition and mo-

tion to quash the alternative writ. After argument, the lower court entered a final judgment sustaining the motion to quash and dismissed the petition at the cost of plaintiff. This appeal followed.

The opinion of the lower court, sustaining defendant's contention that one publication of the proposed amendment three months before the election was a compliance with the constitutional requirement, was based chiefly upon the authority of In re North Whitehall Twp., 47 Pa. 156. That case supports the proposition that publication of intended amendments to the Constitution must begin at least three months before the election, but does not determine the number of publications to be made. Plaintiff points out that, with a few minor exceptions, the general practice of the executive officers of the Commonwealth has been to publish constitutional amendments once a week during the three months preceding the election, and argues that approval of this system by long usuage is of considerable weight in interpreting the intent of the people as expressed in the section of the Constitution above referred to. In support of his contention appellant cites an opinion of Attorney General Todd written in 1909 in which the then attorney general merely states that publication once a week for a period of three months before the general election is a compliance with the requirements of article XVIII. That opinion does not determine that fewer publications would not conform to the constitutional mandate.

Section 1 of article XVIII of the Constitution provides: "Any amendment or amendments to this Constitution may be proposed in the Senate or House of Representatives; and, if the same shall be agreed to by a majority of the members elected to each house, such proposed amendment or amendments shall be entered on their journals with the ayes and nays taken thereon and the Secretary of the Commonwealth shall cause the same to be published three months before the next general

514

election, in at least two newspapers in every county in which such newspapers shall be published; and if, in the General Assembly next afterwards chosen, such proposed amendment or amendments shall be agreed to by a majority of the members elected to each house, the Secretary of the Commonwealth shall cause the same again to be published in the manner aforesaid......"

In determining the meaning of this section, we must look not only to the letter of the words but also the spirit behind them. As stated by Chief Justice GIBSON in Monongahela Navigation Co. v. Coons (1843), 6 W. & S. 101, 114: ".......where multitudes are to be affected by the construction of an instrument, great regard should be paid to the spirit and intention. And the reason for it is an obvious one. A constitution is made, not particularly for the inspection of lawyers, but for the inspection of the million, that they may read and discern in it their rights and their duties; and it is consequently expressed in the terms that are most familiar to them." An interpretation of the provision here under consideration which would limit the publication of proposed additions or revisions to the Constitution to one time three months previous to the election, would not be in harmony with the obvious purpose of publication. This purpose, as stated in Com. v. King, 278 Pa. 280, 282, "was to give the electors an abundant opportunity to be advised concerning the proposed amendment and to ascertain the policy of candidates for the General Assembly to be 'next afterwards chosen' because they would have to pass upon the proposed amendment when it came before the General Assembly a second time." A single publication made three months before the election is not sufficient to enable the electorate to be fully advised of the importance and nature of proposed amendments. At the same time, there is no ground for believing publication for thirteen weeks is necessary, and certainly there is nothing in article XVIII itself requiring such continued publicity. It may be, as suggested

by the 1920 commission on constitutional amendment and revision, that publication once a week for the four weeks preceding a general election, would be a preferable method, but until an amendment of that nature is made to the law, we are not at liberty so to construe it. In view of all the facts and circumstances, we are of opinion that publication once a month for the three months preceding the election is more reasonable and more nearly conforms to the convention's intent, and at the same time provides adequate notice to the public.

The Constitution is the fundamental law of our Commonwealth, and in matters relating to alterations or changes in its provisions, the courts must exercise the most rigid care to preserve to the people the right assured to them by that instrument. No method of amendment can be tolerated which does not provide the electorate adequate opportunity to be fully advised of proposed changes. The construction given to article XVIII by the lower court overlooks this important fact and for that reason is too narrow and technical.

This opinion is supplemental to the order previously made reversing the judgment of the lower court.