John G. BERGDOLL, Gerald C. Grimaud and Matthew R. Battersby, Petitioners

v.

COMMONWEALTH of Pennsylvania, Honorable Pedro A. Cortes, Secretary of the Commonwealth, Pennsylvania General Assembly, Honorable Mike Fisher, Attorney General, Respondents.

Commonwealth Court of Pennsylvania.

Argued March 3, 2004.
Decided Sept. 16, 2004.

See also 557 Pa. 72, 731 A.2d 1261.

188

Gerald C. Grimaud, Tunkhannock, John G. Bergdoll, York, and Matthew R. Battersby, Fairfield, for petitioners.

C. Clark Hodgson, Jr., Philadelphia, for respondent, The General Assembly of the Comm. of PA.

Calvin R. Koons, Harrisburg, for respondents, Attorney General, Comm. of PA and Secretary of the Commonwealth.

BEFORE: COLINS, President Judge, and SMITH–RIBNER, Judge, and PELLEGRINI, Judge, and LEADBETTER, Judge and COHN JUBELIRER, Judge.

OPINION BY Judge LEADBETTER.

John G. Bergdoll, Gerald C. Grimaud and Matthew R. Battersby (petitioners), all residents and practicing attorneys in Pennsylvania, filed the present petition for review in our original jurisdiction. They seek a declaration voiding amendments to Article I, Section 9 (Face to Face Amend-

ment) and Article V, Section 10(c) (Judicial Administration Amendment) of the Pennsylvania Constitution passed by the electorate at the November 4, 2003 Municipal Election. The General Assembly filed preliminary objections challenging the justiciability and the substantive merit of the claims. In a separate filing, the Attorney General and the Secretary of the Commonwealth also filed a single preliminary objection generally demurring. In denying the petitioners' request in October of 2003 for a preliminary injunction against counting the votes on the ballot questions submitted to the electorate, Judge Pellegrini, in his supporting opinion, well-described the facts as follows.

By Joint Resolutions 2002–1 and 2003–1, the General Assembly directed the Secretary to submit two ballot questions to Pennsylvania's qualified electors in the November 4, 2003 Municipal Election seeking to amend two provisions of the Pennsylvania Constitution. Both the House and the Senate voted to approve each amendment, and as required by Article XI, § 1, the Secretary published the same in two newspapers of each county.

The first ballot question, which relates to the rights of the accused in criminal prosecutions under Article I, § 9 of the Pennsylvania Constitution, (Face to Face Amendment) reads, "Shall the Pennsylvania Constitution be amended to provide that a person accused of a crime has the right to be 'confronted with the witnesses against him,' instead of the right to 'meet the witnesses face to face'?" As proposed, that provision would provide as follows:

In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to [meet the witnesses face to face] **be confronted with the witnesses against him,** to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property unless by the judgment of his peers or the law of the land. The use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself.

(Underlined language inserted; bracketed language deleted). Accompanying the ballot question was the requisite "Plain English Statement of the Attorney General of Pennsylvania" (Face to Face Plain Statement). That statement reads:

This ballot question proposes to amend the provision of the Pennsylvania Constitution that gives persons accused of a crime the right to "meet the witnesses face to face." The United States Constitution gives an accused person the right to "be confronted with the witnesses against him." This ballot question would make the language of the Pennsylvania Constitution the same as the language of the United States Constitution.

The Pennsylvania Supreme Court has ruled that laws permitting children to testify in criminal proceedings outside the physical presence of the accused, by means such as videotaped deposition and closed-circuit television, violate the Pennsylvania Constitution because they deny accused persons the right to confront the witnesses against them "face to face." In contrast, the United States Supreme Court has upheld such laws under the United States Constitution, which guarantees accused persons the right to confront the witnesses against

them, but not necessarily the right to confront witnesses "face to face."

The purpose of this ballot question is to remove from the Pennsylvania Constitution the right of accused persons to confront the witnesses against them "face to face," so that the Pennsylvania General Assembly may enact laws or the Pennsylvania Supreme Court may adopt rules that permit children to testify in criminal proceedings outside the physical presence of the accused.

The Pennsylvania Constitution would continue to guarantee accused persons the right to confront the witnesses against them. This ballot question is limited in that it would remove from the Pennsylvania Constitution only the right to confront witnesses "face to face."

The effect of this ballot question would be to remove from the Pennsylvania Constitution the right of accused persons to confront the witnesses against them "face to face" and to make the language of the Pennsylvania Constitution guaranteeing accused persons the right to confront the witnesses against them the same as the language of the United States Constitution.

The second ballot question, which relates to judicial administration under Article V, § 10(c) of the Pennsylvania Constitution, (Judicial Administration Amendment) reads, "Shall the Pennsylvania Constitution be amended to provide that the General Assembly may enact laws regarding the manner by which children may testify in criminal proceedings, including the use of videotaped depositions or testimony by closed-circuit television?" As proposed, that provision would provide as follows:

(c) The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts, justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including the power to provide for assignment and reassignment of classes of actions or classes of appeals among the several courts as the needs of justice shall require, and for admission to the bar and to practice law, and the administration of all courts and supervision of all officers of the judicial branch, if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose. All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions. **Notwithstanding the provisions of this section, the General Assembly may by statute provide for the manner of testimony of child victims or child material witnesses in criminal proceedings, including the use of videotaped deposition or testimony by closed-circuit television.**

(Underlined text to be inserted). Also accompanying this ballot question was the "Plain English Statement of the Attorney General of Pennsylvania" (Judicial Administration Plain Statement). That statement reads:

This ballot question proposes to amend the Pennsylvania Constitution to give the Pennsylvania General Assembly authority to enact laws regarding the way that children may testify in criminal proceedings, including the use of videotaped deposition or testimony by closed-circuit television.

The Pennsylvania Constitution gives the Pennsylvania Supreme Court, and only the Pennsylvania Supreme Court,

authority to make rules governing practice and procedure in the Pennsylvania courts. The Pennsylvania Supreme Court has ruled that the General Assembly cannot enact laws regarding the way that children may testify in criminal proceedings in the Pennsylvania courts.

The purpose of this ballot question is to give the General Assembly authority to make laws regarding the way that children may testify in criminal proceedings, including the use of videotaped depositions or closed-circuit televisions. The purpose of permitting children to testify by such means is to allow them to testify outside the physical presence of the accused.

This ballot question is limited in that it would not change the authority of the General Assembly to make laws regarding practice and procedure in the Pennsylvania courts other than to give the General Assembly authority to make laws regarding the way that children may testify in criminal proceedings.

The effect of this ballot question would be to enable the General Assembly to make laws regarding the way that children may testify in criminal proceedings.

On October 15, 2003, petitioners filed a Petition for Review in our original jurisdiction[1] alleging 11 violations of State law and 2 violations of federal law. The State law violations, in summary, are:

*Count 1:* Composition of the Ballot Question is unconstitutional because the General Assembly must draft the question, not the Secretary.

*Count 2:* Attorney General's Plain English Statement accompanying the Face to Face Ballot Question fails to accurately inform voters of its purpose, limitations, and effects.

*Count 3:* Attorney General's Plain English Statement accompanying the Judicial Administration Ballot Question fails to accurately inform voters of its purpose, limitations, and effects.

*Count 4:* The Ballot Question combines two or more amendments as to the Judicial Administration Amendment in violation of Article XI, § 1 of the Pennsylvania Constitution.

*Count 5:* The Ballot Question combines two or more amendments as to the Face to Face Amendment in violation of Article XI, § 1 of the Pennsylvania Constitution.

*Count 6:* There are multiple proposed amendments in Judicial Administration Ballot Question in violation of Article XI, § 1 of the Pennsylvania Constitution.

*Count 7:* There are multiple proposed amendments in the Face to Face Ballot Question in violation of Article XI, § 1 of the Pennsylvania Constitution.

*Count 8:* The Judicial Administration Ballot Question violates judicial independence and separation of powers.

*Count 9:* The publication of the Ballot Questions and proposed amendments were untimely in violation of Article XI, § 1 of the Pennsylvania Constitution.

*Count 10:* Article I, § 25 forbids amending the Face to Face provision because such provision "remains inviolate."

*Count 11:* The yeas and nays were not appropriately counted in violation of Ar-

---

1. Section 761(a) of the Judicial Code, 42 Pa. C.S. § 761(a), gives this court original jurisdiction of all civil actions or proceedings against the Commonwealth government, including any officer thereof, with certain exceptions not applicable here. The exclusive procedure for commencing such actions is by "petition for review" pursuant to Chapter 15 of the Pennsylvania Rules of Appellate Procedure.

ticle XI, § 1 of the Pennsylvania Constitution.

The federal law violations are as follows:

**Count 1:** The Face to Face amendment violates an accused person's federal rights as guaranteed under the 14th Amendment to the United States Constitution

**Count 2** The proposed amendments violate the guarantee that our government be a republican form of government.

Based on these alleged defects in enactment and substantive conflicts with existing constitutional provisions, petitioners ask us to declare the Amendments void.

■ The Secretary of the Commonwealth and the Attorney General filed a single preliminary objection in the nature of a general demurrer to all Counts. The General Assembly filed four preliminary objections asserting, without specifying Counts, that the claims: (1) are non-justiciable attacks on legislative procedures; (2) fail to state a flaw in the General Assembly's procedures; (3) fail to aver substantive conflict with existing provisions in the Constitution; and, (4) are either waived for failure to raise them in *Bergdoll v. Kane (Bergdoll I)*, 557 Pa. 72, 731 A.2d 1261 (1999), the first action testing a previous attempt to enact these amendments, or judicially estopped as assertions that are inconsistent with assertions successfully maintained in that earlier action. We will sustain the preliminary objections if the petition on its face fails to state a legally cognizable claim. *See Mellow v. Pizzingrilli*, 800 A.2d 350, 354 (Pa. Cmwlth.2002).

In Article XI, § 1, the Pennsylvania Constitution sets forth the manner in which it may be amended, distinguishing between the regular process and an expedited "emergency" process. Article XI, § 1, in relevant part, provides:

Amendments to this Constitution may be proposed in the Senate or House of Representatives; and if the same shall be agreed to by a majority of the members elected to each House, such proposed amendment or amendments shall be entered on their journals with the yeas and nays taken thereon, and the Secretary of the Commonwealth shall cause the same to be published three months before the next general election, in at least two newspapers in every county in which such newspapers shall be published; and if, in the General Assembly next afterwards chosen, such proposed amendment or amendments shall be agreed to by a majority of the members elected to each House, the Secretary of the Commonwealth shall cause the same again to be published in the manner aforesaid; and such proposed amendment or amendments shall be submitted to the qualified electors of the State in such manner, and at such time at least three months after being so agreed to by the two Houses, as the General Assembly shall prescribe; and, if such amendment or amendments shall be approved by a majority of those voting thereon, such amendment or amendments shall become a part of the Constitution; but no amendment or amendments shall be submitted oftener than once in five years. When two or more amendments shall be submitted they shall be voted upon separately.

Pennsylvania Constitution Article XI, § 1.

*Justiciability*

■ Our Supreme Court has repeatedly stated that "nothing short of literal compliance" with this detailed process for the amendment of the fundamental law of our Commonwealth will suffice. *See, e.g., Pennsylvania Prison Soc. v. Commonwealth*, 565 Pa. 526, 537–38, 776 A.2d 971, 978 (2001) (plurality) [*citing Kremer v.*

*Grant,* 529 Pa. 602, 611, 606 A.2d 433, 436 (1992)]. Also, our Supreme Court has made clear that the analytical model for deciding a challenge to the enactment of constitutional amendments is not based on the substantial deference afforded to the adoption of legislation. *Id.* For this reason, there is no merit in the General Assembly's first preliminary objection, asserting generally the non-justiciability of the challenge to the legislatures' procedural compliance with Article XI. The General Assembly's first preliminary objection is, therefore, overruled.[2]

### Waiver/Judicial Estoppel

▆▆▆ In its fourth preliminary objection, the General Assembly contends that the petitioners' claims are waived or judicially estopped. Neither assertion has merit. With respect to waiver, we note that the present action is based on an entirely different attempt to amend the Constitution. Therefore, the general principle that claims arising from the same transaction or occurrence must be joined or, if not, are waived, has no application. With respect to judicial estoppel, we note that, "as a general proposition, a party to an action is estopped from assuming a position inconsistent with his assertion in a previous action, if his assertion was successfully maintained." *Assoc. Hosp. Serv. of Philadelphia v. Pustilnik,* 497 Pa. 221, 227, 439 A.2d 1149, 1151 (1981). However, the doctrine only applies if the issues and the parties are the same in the subsequent action, *Phila. Suburban Water Co. v. Pennsylvania Pub. Util. Comm'n,* 808 A.2d 1044, 1061 (Pa.Cmwlth.2002). Only two of the three petitioners in the present

action were parties in the first action. Moreover, the multiple amendment assertion pressed in the present action, rather than being at odds with the assertions in *Bergdoll I,* expands upon the argument that a single ballot question is improper and argues that the proposed amendments must be submitted to the electorate in more than two ballot questions. For these reasons, waiver and judicial estoppel are inapplicable and the General Assembly's fourth preliminary objection is overruled. Accordingly, we turn to respondents' demurrer.

### Drafting the Ballot Questions

▆▆▆ In Count I, petitioners assert that, pursuant to the amendment procedure prescribed in Article XI, § 1 of the Constitution, only the General Assembly, not the Secretary or the Attorney General, is authorized to draft the Ballot Questions. Therefore, inasmuch as there is no dispute that the General Assembly did not draft the Questions, petitioners contend that the submission of the proposed amendments to the electorate was fatally flawed. This contention is without merit.

Section 1 of Article XI directs that The General Assembly shall prescribe the manner in which the proposed amendments are to be submitted to the qualified electors. Pursuant to this authority, appearing in our Constitution as early as 1874, the General Assembly has directed, in the relevant part of Section 605 of the Election Code,[3] that "proposed constitutional amendments shall be printed on the ballots or ballot labels in brief form to be determined by the Secretary of the Commonwealth with the approval of the Attor-

---

**2.** We note, at this juncture, that the General Assembly does not assert in its first preliminary objection any challenge to the justiciability of petitioners' substantive challenges. Therefore, we reserve until later in this opin-

ion our consideration of the justiciability of these claims.

**3.** Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. §§ 2600–3591.

ney General." 25 P.S. § 2755. In addition, Section 1110(b) of the Code specifies the length of the question and directs its preparation by the Secretary. It states, in relevant part, that "[e]ach question to be voted on shall appear on the ballot labels, in brief form, of not more than seventy-five words, to be determined by the Secretary of the Commonwealth in the case of constitutional amendments or other questions to be voted on by the electors of the State at large...." Section 1110(b), *as amended,* 25 P.S. § 3010(b). In light of the Constitution's grant of authority to prescribe the manner in which the amendments shall be presented to the electorate, the General Assembly quite properly directed in the Election Code that proposed amendments to the Constitution shall be presented as ballot questions composed by the Secretary. Therefore, Count 1 fails to aver a cause of action.

### *Plain English Statements*

Counts 2 and 3 of the petition challenge the adequacy and accuracy of the plain English statements regarding both ballot questions. Petitioners contend that the statements misleadingly imply that the potential effect of the amendments is limited to changing the manner in which a child may testify. Petitioners further assert that the statements fail to adequately describe a variety of alleged implicit collateral changes in other provisions of the State Constitution.

Section 201.1 of the Election Code directs, in pertinent part, that:

[T]he Attorney General shall prepare a statement in plain English which indicates the purpose, limitations and effects of the ballot question on the people of the Commonwealth. The Secretary of the Commonwealth shall include such statement in his publication of a proposed constitutional amendment as re-quired by Article XI of the Constitution of Pennsylvania.

Section 201.1 of the Code, added by the Act of February 19, 1986, P.L. 29, 25 P.S. § 2621.1. This requirement does not impose upon the Attorney General a duty to provide an in depth illustration of how a proposed amendment to the Constitution may affect the public. *See Lincoln Party v. General Assembly,* 682 A.2d 1326, 1332 (Pa.Cmwlth.1996).

In the present case, the Attorney General stated that the purpose of the Face to Face Amendment is to "remove from the Pennsylvania Constitution the right of accused persons to confront the witnesses against them 'face to face,' so that the General Assembly may enact laws or the Pennsylvania Supreme Court may adopt rules that permit children to testify in criminal proceedings outside the physical presence of the accused." In stating the limitations of the amendment, the Attorney General reiterated that only the "face to face" language would be deleted and that the Constitution "would continue to guarantee accused persons the right to confront the witnesses against them." Finally, the Attorney General announced the effects of the amendment as: "to remove from the Pennsylvania Constitution the right of accused persons to confront the witnesses against them 'face to face' and to make the language of the Pennsylvania Constitution guaranteeing accused persons the right to confront the witnesses against them the same as the language of the United States Constitution."

The Attorney General stated that the purpose of the Judicial Administration Amendment is to "give the General Assembly authority to make laws regarding the way that children may testify in criminal proceedings, including the use of video-taped depositions or closed-circuit televisions. *The purpose of permitting children*

to testify by such means is to allow them to testify outside the physical presence of the accused." In stating the limitations, the Attorney General stated that the amendment "would not change the authority of the General Assembly to make laws regarding practice and procedure in the Pennsylvania courts other than to give the General Assembly authority to make laws regarding the way that children may testify in criminal proceedings." The Attorney General announced the effects of the amendment as "to enable the General Assembly to make laws regarding the way that children may testify in criminal proceedings."

■ We do not find these statements flawed. The statements provide relevant information about the past unsuccessful attempts to adjust the law regarding how children may testify and, in light of this historical perspective, each statement accurately describes the principle purpose, limitations and effect of the amendment; Article XI, § 1 does not require more. The Attorney General is under no duty to speculate about and describe every possible unintended effect. It is up to the electorate to determine if the proposed change is appropriate to achieve the stated purpose and sufficiently limited in its effect so as not to open a door to unwanted collateral effects. For these reasons, the plain English statements meet constitutional requirements and Counts 2 and 3 fail to aver a cause of action.

### Multiple Amendments in a Single Question

In Counts 4, 5, 6, and 7, petitioners assert that each of the ballot questions and correspondingly each of the proposed amendments actually contains within it two or more amendments in violation of the requirement in Article XI, § 1 that two or more amendments be submitted and voted on separately. In particular, petitioners assert that the judicial administration ballot question expressly proposes three separate amendments, to wit:

One—The General Assembly is given judicial authority through Article V (The Judiciary) rather than additional legislative power through Article II (The Legislature) or Article III (Legislation) of Pennsylvania's Constitution.

Two—"The General Assembly may by statute provide for the manner of testimony of child material witnesses in criminal proceedings."

Three—The General Assembly may by statute provide for children to testify outside the presence of the accused in criminal proceedings, "including the use of videotaped depositions or testimony by closed-circuit television."

Petition for Review, paragraph 59, at p. 24. Petitioners further assert that the face to face ballot question "implicitly amends Article I, § 1 (Inherent rights of mankind), § 9 (Trial by jury), and § 25 (Reservation of rights in the people). Petition for Review, paragraph 68, at p. 26.

In *Bergdoll I*, two of the present petitioners, Bergdoll and Grimaud, and a third person not a party in the present action, challenged the ballot question submitted to the electorate in November of 1995. At that time, the single ballot question incorporated both of the amendments at issue in the present action. For this reason, our court, sitting en banc, granted summary judgment in favor of the challengers and declared the vote on the ballot question null and void. *Bergdoll v. Kane*, 694 A.2d 1155, 1159 (Pa.Cmwlth.1997). On appeal, our Supreme Court affirmed, stating, "We agree with [the petitioners] that the ballot question encompassed amendments to both Article I, § 9 and Article V, § 10(c), but did not permit the electorate to vote separately upon each of the amendments

in violation of Article XI, § 1." *Bergdoll I,* 557 Pa. at 87, 731 A.2d at 1270.

 Our Supreme Court's decision in *Bergdoll I* ends any further inquiry in the present case into how many ballot questions should be teased out of the present amendment proposals. In *Bergdoll I,* this issue was actually litigated and essential to the judgment rendered, which directed the submission of two ballot questions exactly as was done in the present case. For this reason, under the doctrine of collateral estoppel, Bergdoll and Grimaud, both parties in the prior action, are precluded from relitigating the issue in the present action. *See Roman v. Jury Selection Comm'n of Lebanon County,* 780 A.2d 805, 809 n. 3 (Pa.Cmwlth.2001). As for Battersby, he neither participated in *Bergdoll I* nor was in privity with the petitioners there, so collateral estoppel does not bar his contention that each of the two ballot questions propose more than one amendment.[4] However, *Bergdoll I* constitutes controlling precedent.

In *Bergdoll I,* our Supreme Court found that the single ballot question proposed two substantive changes to the Constitution that served two distinct purposes; to wit, elimination of the face to face requirement of the confrontation clause and authorization for the General Assembly to establish the manner in which children may testify in criminal proceedings. Accordingly, the Court directed that each of these changes be submitted to the electorate in two separate ballot questions.

Moreover, in *Grimaud v. Commonwealth,* 806 A.2d 923 (Pa.Cmwlth.2002), an *en banc* panel of our court confronted the "implicit change" argument similarly asserted in the present case. The court rejected the argument that a constitutional amendment to Article I, § 14, adopted by the electorate in 1998, implicitly amended the guarantees of certain rights in Article I, §§ 1, 9, 13, and 25, stating:

> We further reject petitioners' argument that a single-ballot question as to Article I, Section 14 violated the separate vote requirement because other constitutional provisions were "implicitly" amended. The fact that an amendment to one provision of the Constitution may possibly impact other provisions does not violate the separate vote requirement. The Pennsylvania Constitution is a dynamic document in which rights and powers are inextricably intertwined. Any time the electorate votes to amend one provision, other constitutional provisions may be implicitly affected in some way. It would be impractical to subject every conceivable consequence of an amendment to a separate vote. Petitioners' approach would require the General Assembly to pose multiple amendments stating the same thing, "potentially resulting in confusion or chaos," as an elector would hypothetically be able to vote in favor of one amendment and against the others, notwithstanding the fact that passage of all of the amendments would be required in order to

4. "Privity is broadly defined as "mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right." *Montella v. Berkheimer Assoc.,* 690 A.2d 802, 804 (Pa.Cmwlth.1997). "Privity for purposes of res judicata is not established by the mere fact that persons may be interested in the same question or in proving the same facts." *Day v. Volkswagenwerk*

*Aktiengesellschaft,* 318 Pa.Super. 225, 464 A.2d 1313, 1317 (1983). While recognizing that the doctrine of collateral estoppel or issue preclusion is a broader concept than res judicata or claim preclusion, and that an identity of parties is not strictly required in order to invoke the former bar, it remains true that the party against whom the bar is asserted must be the same as in the prior suit or in privity therewith. *Id.* at 1319.

effectuate a single change. Logic, therefore, dictates that our inquiry cannot be whether an amendment in some way implicitly impacts another constitutional provision. Rather, our inquiry must be whether an amendment has one core purpose and effectuates one substantive change to the Constitution.

*Id.* at 930. The Supreme Court's decision in *Bergdoll I* conclusively answered this inquiry. Inasmuch as the Secretary complied with the Court's direction and submitted two ballot questions to the electorate, there exists no basis for the present challenge. Therefore, Counts 4, 5, 6 and 7 fail to aver a cause of action.

### Timely Publication

In Count 9, petitioners challenge the timeliness of the publication of the proposed amendments. In particular, petitioners complain that the Secretary erred in causing publication during late July/early August, early September and early October just prior to the respective November elections in 2002 and 2003. The petitioners assert that the Secretary was obligated to cause publication in 2002, immediately following passage of the joint resolution on January 23, 2002. Similarly, they assert that, in 2003, publication should have followed immediately after passage of the joint resolution on June 23, 2003 resulting in publication "at least once per month for the three months preceding prior (sic) to three (3) months before the November 4, 2003 municipal election."

■ The petitioners point to language in each joint resolution directing that, "Upon . . . passage by the General Assembly of these proposed constitutional amendments, the Secretary of the Commonwealth shall proceed immediately to comply with the advertising requirements of section 1, Article XI. . . ." Petitioners, although not specifying in their petition the months when publication should have occurred, apparently believe that use of the term "immediately" obliged the Secretary to cause publication in February, March and April of 2002, and in July, August and September of 2003. Petitioners also point specifically to the publication in the Blairsville Dispatch on August 8, 2003 as being too late to satisfy the constitutional requirement. In support of their contentions regarding the timing of publication, petitioners rely on statements in *Tausig v. Lawrence,* 328 Pa. 408, 197 A. 235 (1938) and *Commonwealth v. King,* 278 Pa. 280, 122 A. 279 (1923), indicating that publication must be completed three months or more before the election. They also rely on *Commonwealth v. Beamish,* 309 Pa. 510, 164 A. 615 (1932) to support the contention that the Secretary was obliged to publish in each of three months. From these cases the petitioners assert a rule calling for three consecutive months of publication with the last occurring in August. Our review of the language in the Constitution and the cases does not establish that the Secretary was under such a duty. While publication in each of three months is called for, publication in the three months preceding the election is sufficient and the slight variation as to the day in each month that the different newspapers actually published the amendments is not fatal to the present adoption.

Article XI, § 1 requires, in pertinent part, that after the General Assembly votes on the proposed amendments on each of two occasions, the Secretary of the Commonwealth "shall cause the same to be published three months before the next general election, in at least two newspapers in every county in which such newspapers shall be published." In *King,* our Supreme Court held that a constitutional amendment may be submitted to the electorate in an odd numbered municipal

election year. The Court, considering the publication requirement in then section 1 of Article 18, identical to that now appearing in Article XI, § 1, said that the appearance of the advertised amendment "in the proper publications three months before the day set for the electorate to pass on the proposed amendment is sufficient." *Id.* at 283, 122 A. at 280.

In *Tausig,* our Supreme Court held that the publication provision is mandatory rather than directory. In its opinion, the Court considered the meaning of the requirement, stating:

> All the section commands is that the secretary transmit the advertisements of the proposed amendments to the proper newspapers within sufficient time to enable them to be published at a date three months or more in advance of the election, with directions that they be so published.

*Id.* at 415, 197 A. at 239. The Court concluded that if the Secretary directed the newspapers to publish the advertisements before or on the date in August three months before the November election, the Secretary fully complied with the mandatory requirements of the Constitution. *Id.* at 416, 197 A. at 239. With respect to the actual date on which the advertisements appeared in the newspapers, the Court said:

> [T]he fact that some of the advertisements were not published until a few days after [the requisite] date does not affect the validity of the submission of the proposed amendments nor constitute a violation of the Constitution. The secretary performed his duty when he, through his deputy, issued the advertisements and ordered their publication on time.

*Id.*

Finally, in *Beamish,* our Supreme Court noted that the purpose of publication, "was to give the electors an abundant opportunity to be advised concerning the proposed amendment and to ascertain the policy of candidates for the General Assembly 'next afterwards chosen' because they would have to pass upon the proposed amendment when it came before the General Assembly the second time." *Beamish,* 309 Pa. at 514, 164 A. at 616 [*quoting King,* 278 Pa. at 282, 122 A. at 280]. In light of this purpose, the Court ruled as to the necessary number and frequency of publications, stating:

> A single publication made three months before the election is not sufficient to enable the electorate to be fully advised of the importance and nature of the proposed amendments. At the same time, there is no ground for believing publication for thirteen weeks is necessary; and certainly there is nothing in article 18 itself requiring such continued publicity. It may be suggested by the 1920 Commission of Constitutional Amendment and Revision, that publication once a week for four weeks preceding a general election would be a preferable method; but, until an amendment of that nature is made to the law, we are not at liberty so to construe it. In view of all the facts and circumstances, we are of the opinion that publication once a month for the three months preceding the election is more reasonable and more nearly conforms to the Convention's intent, and at the same time provides adequate notice to the public.

*Id.* at 514, 164 A. at 616. Based on this conclusion, the Court directed, in an order dated September 26, that the Secretary should cause publication of the proposed amendments in September and October, which in conjunction with the publication already made in August would satisfy the constitutional requirements. The Court did not require three monthly publications

each more than three months before the election, as petitioners assert should have occurred in the present action.

In the present case, the parties have stipulated to the authenticity and accuracy of the invoices submitted for publication in the various newspapers. These reveal that the amendments were published in each of the three months preceding the November 5, 2002 election. Specifically, the amendments were published on July 27, July 31 or the first two days of August and thereafter on two more occasions approximately 30 and 60 days later. Similarly, publication was made in each of the three months preceding the election on November 4, 2003. The parties have further stipulated that the August 8, 2003 publication in the Blairsville Dispatch, which is a weekly newspaper, effected a correction of the incomplete publication made on August 1. The dates of actual publication leave no room for doubt that the Secretary submitted the required advertisements to the newspapers in ample time to achieve timely publication. It is this indisputable fact that establishes the Secretary's performance of his constitutional duty and distinguishes the present case from *Kremer v. Grant*, 529 Pa. 602, 606 A.2d 433 (1992). In *Kremer*, the Secretary transmitted the amendments to the various newspapers no sooner than four days, two of which were over a weekend, before publication needed to occur, resulting in only six newspapers achieving publication on or before the target date of August 6. In contrast, the Secretary in the present case did exactly what the Court in *Tausig* said must be done to satisfy the Constitution's publication requirement. Therefore, Count 9 fails to aver a cause of action.

### General Assembly's Vote

In Count 11, the petitioners contend that the electronic voting procedure, used in Pennsylvania's House of Representatives, does not satisfy the constitutional requirement that the vote "be entered on their journals with the yeas and nays taken thereon...." We rejected a similar challenge to the constitutional propriety of electronic voting in *Grimaud v. Commonwealth*, 806 A.2d 923 (Pa.Cmwlth.2002), where we said, "[o]ther than the express requirements set forth in Article XI, the procedures to be used in proposing amendments are exclusively committed to the Legislature." *Id.* at 935 [*quoting Mellow v. Pizzingrilli*, 800 A.2d 350, 359 (Pa. Cmwlth.2002)]. It is readily apparent that the purpose of the vote requirement imposed in Article XI is consistent with the purpose identified previously for requiring publication after the General Assembly's first vote. That is to afford the electorate the opportunity to ascertain their representative's position on the amendment prior to the next general election, at which a change might be made as to the representative who would next vote on the amendments. *See Tausig*, 328 Pa. at 413, 197 A. at 238; *King*, 278 Pa. at 282–83, 122 A. at 279. Accordingly, so long as the Legislative Journals establish that the members' votes were taken and entered, we will look no further into the procedures utilized. *Id.* We may take judicial notice of the Legislative Journals, *see, e.g., Department of Auditor Gen. v. State Employees' Ret. Sys.*, 836 A.2d 1053, 1068 (Pa.Cmwlth. 2003); and, having done so in the present case, conclude that no flaw in the General Assembly's vote transgresses the constitutional requirements in Article XI.

There is no merit in the petitioners' contention, asserted in their brief rather than in their petition, that the second passage in each legislative house failed to occur in the General Assembly "next afterward chosen." In the present case, the Senate first voted in favor of the

amendments on June 11, 2001 during the 185th session, the House voted in favor thereof on January 23, 2002 during the 186th session and the second vote occurred on February 3, 2003 in the Senate and June 23, 2003 in the House, both during the 187th session. Petitioners premise their contention on the numbering of the legislative sessions rather than on whether the General Assembly passed the amendments by votes taken before and then after a general election. Article XI requires a second passage of the amendment by the General Assembly chosen in the general election following the initial passage. That is precisely what occurred in the present case—the membership of the General Assembly initially agreed to the amendments prior to the general election in 2002 and then following the general election in 2002 agreed for the second time. Therefore, Count 11 fails to aver a cause of action.

### Substantive Challenges

In Count 10, petitioners contend that the Face to Face Amendment impermissibly removes from the Constitution the right of a criminal defendant to confront his accuser face to face, which is inviolate under Article I, § 25. In Federal Count 1, petitioners assert that this change results in a violation of both the State and federal Constitutions insofar as it discriminates against a class of defendants and will likely result in more wrongful convictions.

■ Our Supreme Court addressed the first premise, that the articulation of rights in Article I limits the power to amend the Constitution, in *Gondelman v. Commonwealth*, 520 Pa. 451, 554 A.2d 896 (1989). *Gondelman* involved a challenge to the provision in Article V for mandatory retirement of judges on the ground that it

conflicted with the rights protected under Article I. The Court said:

This theory recognizes that we in this Commonwealth in dispensing the reservoir of power consigned to the states under our system of federalism, have determined that the rights articulated in Article I are to be recognized as being inherent in the right of a resident of this Commonwealth and insulated against the governmental power of this Commonwealth. As explained by this Court in *Western Pennsylvania Socialist Workers 1982 Campaign v. Connecticut General Life Insurance Co.*, 512 Pa. 23, 28–29, 515 A.2d 1331, 1334 (1986):

The primary purposes of a constitution are to establish a government, define or limit its powers and divide those powers among its parts. The United States Constitution establishes a government of limited and enumerated powers. Consequently, the national government possesses only those powers delegated to it. State constitutions, on the other hand, typically establish governments of general powers, which possess all the powers not denied by the State constitution. Our State constitution functions this way and restrains these general powers by a Declaration of Rights [in Article I].

We agree with the general proposition that those rights enumerated in the Declaration of Rights are deemed to be inviolate and may not be transgressed by government. . . .

Thus [petitioners'] argument would be convincing if its focus was directed at a legislative enactment, an executive regulation or a judicial decision. Here however the challenge relates to a pronouncement of the people. . . . It is absurd to suggest that the rights enumerated in Article I were intended to restrain the power of the people themselves. Such a proposition loses sight of "the basic overriding principle of

American government—that all power is in the people."

*Id.* at 466–67, 554 A.2d at 903–04 (citations omitted).

 The assertion in Federal Count 1, that the amendment to the confrontation clause discriminates against persons accused of child abuse is baseless. The amendment on its face pertains to the right of every criminal defendant and does not apply to defendants accused of a particular type of crime. The additional contention that the amendment will result in a deprivation of due process because it will likely cause an increase in wrongful convictions is pure speculation and, for this reason alone, an utterly insufficient basis for a cause of action. Moreover, the challenged amendment conforms the confrontation provision of our State Constitution to that of the Confrontation Clause in the Sixth Amendment of the United States Constitution.[5]

 In *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), the Supreme Court upheld as constitutional Maryland's statutory procedure permitting a child victim of crime to testify outside the view of the defendant and observed that, "[a]lthough face-to-face confrontation forms 'the core of the values furthered by the Confrontation Clause,' we nevertheless recognized that it is not the *sine qua non* of the confrontation right." *Id.* at 847, 110 S.Ct. 3157. Hence, the removal of the "face to face" language from our State Constitution per se does not result in an infringement of federally protected rights. Inasmuch as our State legislature has not established rules governing child testimony, petitioners' specu-

lative concerns are premature and any decision respecting these concerns must await a ripe controversy.

In Count 8, petitioners contend that the Judicial Administration Amendment violates the separation of powers doctrine, in conferring rulemaking authority to the legislature. In Federal Count 2, petitioners assert that this breach of the separation of powers somehow undermines Pennsylvania's republican form of government[6] as protected under the "Guarantee Clause" in Article IV, Section 4 of the United States Constitution, which, in pertinent part, provides that, "[t]he United States shall guarantee to every State in this Union a Republican Form of Government."

 Our State Constitution establishes and defines the separation of powers among the three branches of government. The present assignment of powers and duties among the three branches does not bar the people from exercising their power to adjust that assignment. Our Constitution reserves the ultimate political power to the people in Article I, § 2, which provides:

All power is inherent in the people, and all free governments are founded on their authority and instituted for their peace, safety and happiness. For the advancement of these ends they have at all times an inalienable and indefeasible right to alter, reform or abolish their government in such manner as they may think proper.

Insofar as the people may amend their Constitution and, thereby, may adjust the particular authority of each branch, the

---

5. The Sixth Amendment of the United States Constitution, in relevant part, provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."

6. A republican form of government is government of the people or by representatives chosen by the people. *In re Duncan*, 139 U.S. 449, 11 S.Ct. 573, 35 L.Ed. 219 (1891).

petitioners' contention simply fails. Petitioners speculate that at some point a separation of powers problem could arise as a result of assigning some rulemaking authority to the legislature while leaving the bulk of such authority to the judiciary but we will not confront such a possibility until a ripe controversy is before us.

■■■■ As for petitioners' contention that the amendment undermines Pennsylvania's republican form of government in violation of the federal guarantee clause, we find the premise untenable. First, in general, claims under the guarantee clause are not justiciable. *See, e.g., Baker v. Carr*, 369 U.S. 186, 217–27, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); *Pacific States Tel. & Tel. Co. v. Oregon*, 223 U.S. 118, 32 S.Ct. 224, 56 L.Ed. 377 (1912). In *Pacific States Telephone*, the Supreme Court explained:

> [I]t rests with Congress to decide what government is the established one in a state. For, as the United States guarantee to each state a republican form of government, Congress must necessarily decide what government is established in the state before it can determine whether it is republican or not. And when the senators and representatives of a state are admitted into the councils of the Union, the authority of the government under which they are appointed, as well as its republican character, is recognized by the proper constitutional authority. And its decision is binding on every other department of the government, and could not be questioned in a judicial tribunal.

223 U.S. at 147, 32 S.Ct. 224. Thus, enforcement of the federal guarantee clause is the province of the federal legislature. Second, petitioners do not, nor do we see how in this case they possibly could, aver or explain how the people in exercising their ultimate power to alter their Constitution threaten their republican form of government.

For these reasons, Counts 8, 10 and Federal Counts 1 and 2 fail to aver causes of action.

Inasmuch as the petition fails as a matter of law to aver any viable cause of action, we sustain the General Assembly's second and third preliminary objections in the nature of demurrers and, we sustain the Secretary's and Attorney General's single preliminary objection generally demurring to all Counts.

### ORDER

AND NOW, this 16th day of September, 2004, the General Assembly's first and fourth preliminary objections in the above captioned matter are hereby OVERRULED and the remaining preliminary objections in the nature of a demurrer by Respondents are hereby SUSTAINED and the petition for review is DISMISSED.

CONCURRING AND DISSENTING OPINION BY Judge PELLEGRINI.

I respectfully dissent from that portion of the majority's opinion sustaining the preliminary objections filed by the General Assembly, the Attorney General and the Secretary of the Commonwealth (Secretary) in response to Count 2 of the petition for review filed in our original jurisdiction by John G. Bergdoll, Gerald C. Grimaud and Matthew R. Battersby (Petitioners) because the plain English statement accompanying the ballot question on confrontation of witnesses is misleading as to the content of the ballot question.

In 2003, the General Assembly directed the Secretary to submit a ballot question to Pennsylvania's qualified electors in the November 4, 2003 municipal election regarding the amendment of Article I, Section 9 of the Pennsylvania Constitution.

That ballot question, which related to the rights of the accused in a criminal prosecution under Article I, Section 9 of the Pennsylvania Constitution, read: "Shall the Pennsylvania Constitution be amended to provide that a person accused of a crime has the right to be 'confronted with the witnesses against him,' instead of the right to 'meet the witnesses face to face'?" The proposed provision read as follows:

> In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to [meet the witnesses face to face] *be confronted with the witnesses against him,* to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself; nor can he be deprived of his life, liberty or property unless by the judgment of his peers or the law of the land. The use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself. (Underlined language inserts; bracketed language deleted.)

Accompanying the ballot question was the required "Plain English Statement of the Attorney General of Pennsylvania" which stated:

> This ballot question proposes to amend the provision of the Pennsylvania Constitution that gives persons accused of a crime the right to "meet the witnesses face to face." The United States Constitution gives an accused person the right to "be confronted with the witnesses against him." This ballot question would make the language of the Pennsylvania Constitution the same as the language of the United States Constitution.
>
> The Pennsylvania Supreme Court has ruled that laws permitting children to testify in criminal proceedings outside the physical presence of the accused, by means such as videotaped deposition and closed-circuit television, violate the Pennsylvania Constitution because they deny accused persons the right to confront the witnesses against them "face to face." In contrast, the United States Supreme Court has upheld such laws under the United States Constitution, which guarantees accused persons the right to confront the witnesses against them, but not necessarily the right to confront witnesses "face to face."
>
> *The purpose of this ballot question is to remove from the Pennsylvania Constitution the right of accused persons to confront the witnesses against them "face to face," so that the Pennsylvania General Assembly may enact laws or the Pennsylvania Supreme Court may adopt rules that permit **children** to testify in criminal proceedings outside the physical presence of the accused.*
>
> The Pennsylvania Constitution would continue to guarantee accused persons the right to confront the witnesses against them. This ballot question is limited in that it would remove from the Pennsylvania Constitution only the right to confront witnesses "face to face."
>
> The effect of this ballot question would be to remove from the Pennsylvania Constitution the right of accused persons to confront the witnesses against them "face to face" and to make the language of the Pennsylvania Constitution guaranteeing accused persons the right to confront the witnesses against them the same as the language of the United States Constitution.

(Emphasis added.)[1] Among other things, Petitioners allege in Count 2 of their petition for review that the Attorney General's plain English statement failed to accurately inform voters of its purpose, limitations and effects because the statement misleadingly implied that the effect of the amendment was limited to changing the manner in which a child could testify. The Secretary, the Attorney General and the General Assembly filed preliminary objections arguing that the claim failed to aver a substantive conflict with the Constitution.

Sustaining the Secretary's preliminary objection to Count 2 of the petition for review, the majority holds that the statement meets the plain language requirement because it states that the purpose of the amendment was to remove from the Pennsylvania Constitution the right of accused persons to confront the witnesses against them face to face and allow children to testify in criminal proceedings outside the physical presence of the accused.

I dissent from that portion of the decision because I disagree that the Attorney General's plain English statement complies with Section 201.1 of the Election Code.[2] Section 201.1 of the Election Code provides, in relevant part:

> [T]he Attorney General shall prepare a statement in plain English which indicates the purpose, limitations and effects of the ballot question on the people of the Commonwealth. The Secretary of the Commonwealth shall include such statement in his publication of a proposed constitutional amendment as required by Article XI of the Constitution of Pennsylvania.

All that is required in the statement is the purpose, limitations and effects of the ballot question. From reading the statement, one should be able to determine what the ballot question asks and its effects.

In this case, rather than making it clear that the amendment takes away from all *persons* who may have to testify and confront witnesses "face to face," the Attorney General's plain English statement gives the impression that the ballot question deals only with whether children acting as witnesses have to confront those being accused "face to face" or whether the children can testify outside their presence. Because the amendment itself does not even mention the word "children" and the ballot question removes from our Constitution the right to confront witnesses in person from everyone, the plain English statement impression that it only removes that requirement to protect children is misleading and is in violation of Section 201.1 of the Election Code.

Accordingly, because I would overrule the Secretary's preliminary objection to Count 2 of Petitioner's petition for review, I dissent only from that portion of the majority opinion.

Judge SMITH–RIBNER joins in this concurring and dissenting opinion.

---

1. The amendment was passed by the electorate at the November 4, 2003 election.

2. Section 201.1 of the Election Code, *added by* the Act of February 19, 1986, P.L. 29, 25 P.S. § 2621.1.