145 A.3d 1136

Richard A. SPRAGUE, Hon. Ronald D. Castille
and Hon. Stephen Zappala, Sr., Plaintiffs,

v.

Pedro A. CORTES, Secretary of the Commonwealth of
Pennsylvania, in his Official Capacity, Defendant.

No. 75 MAP 2016.

Supreme Court of Pennsylvania.

Sept. 2, 2016.

Brooke Spigler Cohen, Jordann Richard Conaboy, Richard A. Sprague, William Howard Trask, Sprague & Sprague, for Richard A. Sprague, Hon. Ronald D. Castille, Hon. Stephen Zappala, Appellants.

Timothy Eugene Gates, Pa. Office of General Counsel, Kathleen Marie Kotula, Pa. Dept. of State, for Pedro A. Cortés, Appellee.

G. Alexander Bochetto, Thomas E. Groshens, John Anthony O'Connell, Bochetto and Lentz, P.C., for Jay Costa, Daylin Leach, Christine Tartaglione, Amicus Curiae.

Mark Edward Seiberling, Matthew Hermann Haverstick, Joshua John Voss, Kleinbard LLC, for Joseph B. Scarnati, Jacob Corman, Amicus Curiae.

SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.

## *ORDER*

PER CURIAM.

**AND NOW,** this 2nd day of September, 2016, the Court being evenly divided in its determination as to which parties are entitled to the grant of summary relief, this Court is without authority to grant relief and the *status quo* of the

matter prior to the filing of the lawsuit is maintained. *See Creamer v. Twelve Common Pleas Judges*, 443 Pa. 484, 281 A.2d 57 (1971) (holding that where this Court was evenly divided in a King's Bench original jurisdiction matter challenging gubernatorial appointments to judicial vacancies, the appropriate disposition was to enter a *per curiam* order noting that the requested relief could not be granted, thereby maintaining the *status quo* of the matter).

Chief Justice SAYLOR did not participate in the consideration or decision of this matter.

Justice BAER files an Opinion In Support Of Denying Plaintiffs' Application For Summary Relief And Granting Defendant's Application for Summary Relief in which Justice DONOHUE and Justice MUNDY join.

Justice TODD files an Opinion in Support of Granting Plaintiffs' Application For Summary Relief and Denying Defendant's Application for Summary Relief in which Justice DOUGHERTY joins and Justice WECHT joins in part.

Justice WECHT files an Opinion in Support of Granting Plaintiffs' Application For Summary Relief and Denying Defendant's Application for Summary Relief.

Justice BAER, in support of denying plaintiffs' application for summary relief and granting defendant's application for summary relief.

For the reasons set forth below, we conclude that Plaintiffs are not entitled to summary relief.

This matter involves a challenge to the November 2016 General Election ballot question, as framed by Defendant Pedro A. Cortés, the Secretary of the Commonwealth ("Secretary"), which seeks to amend the mandatory judicial retirement age set forth in Article V, Section 16(b) of the Pennsylvania Constitution.[1] The issue presented by Plain-

1. Article V, Section 16(b) currently provides, in relevant part, that "Justices, judges and justices of the peace shall be retired on the last

tiffs' complaint is whether the ballot question is unlawful on the ground that it informs the electorate of the proposed amended constitutional language, but does not reference the existing constitutional language. For the reasons that follow, we would find no legal impediment to the Secretary's statement of the ballot question.

On July 21, 2016, the Honorable Ronald D. Castille, the Honorable Stephen A. Zappala, and Attorney Richard A. Sprague ("Plaintiffs") commenced an action in the Commonwealth Court through the filing of a complaint seeking declaratory and injunctive relief. Therein, Plaintiffs challenged the Secretary's framing of the constitutional question to be placed on the November 2016 General Election ballot, which states:

Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges, and magisterial district judges be retired on the last day of the calendar year in which they attain the age of 75?

Plaintiffs contended that the language is unlawfully misleading because it advises voters only of the proposed amended constitutional language and does not inform voters that the existing mandatory judicial retirement age is 70. Plaintiffs requested a declaration that the ballot question violates Pennsylvania law, and sought to enjoin the Secretary from presenting the question on the general election ballot.

Later that day, Plaintiffs filed in this Court an emergency application requesting that we assume plenary jurisdiction over the action pursuant to 42 Pa.C.S. § 726.[2] This Court granted Plaintiffs' emergency application on July 27, 2016, and

day of the calendar year in which they attain the age of 70 years." PA. CONST. art. V, § 16(b).

**2.** Section 726, entitled "Extraordinary jurisdiction," provides:

Notwithstanding any other provision of law, the Supreme Court may, on its own motion or upon petition of any party, in any matter pending before any court or magisterial district judge of this Commonwealth involving an issue of immediate public importance, assume plenary jurisdiction of such matter at any stage thereof and enter a final order or otherwise cause right and justice to be done. 42 Pa.C.S. § 726. The Secretary did not oppose Plaintiffs' request for the exercise of plenary jurisdiction.

a briefing schedule was established. Because there are no factual issues in dispute, both parties have filed applications for summary relief.

In their brief to this Court, Plaintiffs contend that the ballot question as framed will infringe upon their purported state constitutional right to vote on an amendment to the Pennsylvania Constitution and their right to due process. More pointedly, Plaintiffs argue that, by omitting from the ballot question the existing constitutional language to be changed, the Secretary has violated his obligation, set forth by this Court in *Stander v. Kelley*, 433 Pa. 406, 250 A.2d 474 (1969), to clearly and accurately apprise voters of the issue to be decided.

Plaintiffs surmise that, because the ballot question does not inform the electorate of the existing judicial mandatory retirement age, voters will assume that they are being asked to institute one. They further speculate that voters will be more likely to vote "yes" if they believe that they are instituting a mandatory retirement age, rather than increasing the current mandate. Based on their belief that voters will be misled by the ballot question's current phrasing, Plaintiffs seek a rule that where the proposed constitutional amendment alters existing constitutional language, the ballot question must reference the current provision in addition to the proposed new language.

Plaintiffs cite no Pennsylvania constitutional or statutory provision, nor any on-point Pennsylvania precedent, to support their request for this new ballot question requirement; rather, they cite an Idaho Supreme Court decision from 1929, *Lane v. Lukens*, 48 Idaho 517, 283 P. 532 (1929), and two decisions of the Florida Supreme Court, *Askew v. Firestone*, 421 So.2d 151 (Fla.1982); *Wadhams v. Bd. of Cty. Comm'rs*, 567 So.2d 414 (Fla.1990), none of which carry any precedential value in this Commonwealth. As discussed *infra*, in *Lane*, the Idaho court held that a proposed ballot question that asked whether executive officers should be "limited" to a term of four years was unconstitutional where the proposed legislative amendment actually sought to extend the term of executive officers

from two years to four years. The court focused on the fact that the proposed amendment sought to expand terms, while the question, as framed, stated the term would be limited. Because of the conflict between what was proposed (term extensions) and what was asked (term limits), the court struck the ballot question.

In *Askew* and *Wadhams,* the Florida Supreme Court struck ballot questions where the queries, as drafted, violated a state statute requiring that a proposed ballot question contain an explanatory statement within the initiative itself. Specifically, the Florida state law applicable in those cases specified:

> Whenever a constitutional amendment or other public measure is submitted to the vote of the people, the substance of such amendment or other public measure shall be printed in clear and unambiguous language on the ballot.... The substance of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure.

Fla. Stat. Ann. § 101.161.

Plaintiffs acknowledge that, in Pennsylvania, unlike Florida, the purpose, limitations, and effects of the ballot question on the citizens of the Commonwealth must be set forth in a Plain English Statement drafted by the Attorney General. 25 P.S. § 2621.1 ("Explanation of ballot question"). As such, the Election Code does not require a duplicative description in the ballot question itself. Nevertheless, Plaintiffs maintain that we should fashion such a requirement. Plaintiffs conclude that the current drafting of the question is defective and that such defect cannot be cured or ameliorated by the Attorney General's Plain English Statement.

In seeking relief, Plaintiffs request: (1) a declaration that the ballot question is unlawful; (2) an injunction precluding the Secretary from placing the question as presently worded on the November 2016 General Election Ballot; and (3) an order directing the Secretary (at some uncertain future time) to present voters with a ballot question advising that the proposed amendment would result in the current constitution-

ally-mandated judicial retirement age being raised from 70 to 75.

In response, the Secretary asserts that he has the exclusive authority to formulate the ballot question pursuant to Sections 201(c), 605, and 1110(b) of the Election Code, 25 P.S. §§ 2621(c), 2755 and 3010(b), and that the only limit on this power, as set forth by *Stander, supra,* is that the language of the ballot question must fairly, accurately, and clearly apprise the voter of the question or issue on which the electorate must vote. He notes that in conferring such authority, the legislature intended to grant the Secretary of the Commonwealth broad discretion as to the particular language that will appear on the ballot. The Secretary maintains that he satisfied all requisites of the law as he exercised his discretion by framing the question in a fair, accurate, and clear manner that apprises voters of the question to be voted on, *i.e.*, whether members of the judiciary must retire at the age of 75. Thus, the Secretary concludes that his wording of the constitutional question satisfies the requirements of *Stander.*

The Secretary acknowledges that in any case there will be multiple ways to frame a ballot question, which ultimately have the same meaning and effect.[3] He contends that whether any particular phrasing is "better" than another is not a proper consideration for the judicial branch in analyzing whether the chosen wording is lawful. The Secretary asserts that if we grant the requested relief and direct him to utilize the language that Plaintiffs prefer, then all future ballot questions would be subject to challenge by any voter who believes that he or she could phrase the ballot question in a

**3.** The Secretary explains that he had initially drafted the question in a different form more akin to that suggested by Plaintiffs herein, but altered the phrasing in an attempt to bring certainty to the election matter. *See* Brief of Secretary at 9 (stating that in late May of 2016, to resolve uncertainty surrounding the phrasing of the ballot question due to protracted litigation on the issue, the Secretary decided to amend voluntarily his wording of the ballot question to conform to the text of Proposed Constitutional Amendment 1 contained in House Resolution 783). We emphasize that the issue here is whether the current phrasing of the ballot question is lawful, and neither the Secretary's previous drafts of the question or the Secretary's stances in prior litigation involving the ballot question is germane to this analysis.

more informative way. Moreover, by granting such relief, he notes that the Court would essentially become the Secretary's editor in future ballot challenges. Finally, the Secretary asserts several procedural and jurisprudential reasons to bar Plaintiffs' requested relief, including that Plaintiffs' complaint raises a non-justiciable question and is barred by the doctrine of laches.[4]

Recognizing the procedural posture of the case before us, we acknowledge initially that an application for summary relief may be granted if a party's right to judgment is clear and no material issues of fact are in dispute. *Hosp. & Healthsystem Ass'n of Pa. v. Commonwealth,* 621 Pa. 260, 77 A.3d 587, 602 (2013); *see also* Pa.R.A.P. 1532(b) (providing that "[a]t any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear"). For the reasons set forth *infra,* we would hold that the Secretary has established a clear right to relief.

Because the cornerstone of our analysis is Article XI, Section 1 of the Pennsylvania Constitution, which sets forth the procedure for amending our Constitution, we begin with an examination of that provision.[5] Germane to the issue

4. As we find no merit to Plaintiffs' position, we do not address the remainder of the Secretary's alternative arguments.

5. Article XI, Section 1 provides:

Amendments to this Constitution may be proposed in the Senate or House of Representatives; and if the same shall be agreed to by a majority of the members elected to each House, such proposed amendment or amendments shall be entered on their journals with the yeas and nays taken thereon, and the Secretary of the Commonwealth shall cause the same to be published three months before the next general election, in at least two newspapers in every county in which such newspapers shall be published; and if, in the General Assembly next afterwards chosen, such proposed amendment or amendments shall be agreed to by a majority of the members elected to each House, the Secretary of the Commonwealth shall cause the same again to be published in the manner aforesaid; and such proposed amendment or amendments shall be submitted to the qualified electors of the State in such manner, and at such time at least three months after being so agreed to by the two Houses, as the General Assembly shall prescribe; and, if such amendment or amendments shall be approved by a majority of those voting thereon,

presented, Article XI, Section 1 provides that constitutional amendments may be proposed in the Senate or House of Representatives. If a majority of each house approves the amendment in two consecutive sessions, then Article XI, Section 1 requires that the Secretary publish the proposed constitutional amendment in newspapers across the Commonwealth in a specified manner. Such proposed amendments must be submitted to the qualified electors of the state in such manner and at such time as the General Assembly shall prescribe.[6] Importantly, the Constitution does not speak to the wording of ballot questions but merely provides the General Assembly with the power to decide the manner and time in which to present proposed constitutional amendments to voters.

Pursuant to this constitutional authority, the Legislature prescribed procedures in the Election Code, including 25 P.S. § 3010(b), which states, in relevant part, that "[e]ach question to be voted on shall appear on the ballot labels, in brief form, of not more than seventy-five words, to be determined by the Secretary of the Commonwealth in the case of constitutional amendments...." *See also* 25 P.S. § 2755 (providing that "proposed constitutional amendments shall be printed on the ballots or ballot labels in brief form to be determined by the

such amendment or amendments shall become a part of the Constitution; but no amendment or amendments shall be submitted oftener than once in five years. When two or more amendments shall be submitted they shall be voted upon separately.
PA. CONST. art. XI, § 1.

6. In his opinion, Justice Wecht defers to Black's Law Dictionary's definition of the term "amendment" as employed in Article XI, Section 1, and concludes that an "amendment" is a "change made by addition, deletion, or correction." Op. at 571, 145 A.3d at 1154 (citing Black's Law Dictionary (10th ed.2014)). He proceeds to reason that Article XI, Section 1 is violated here because in order for the electorate to accept a "change" to the constitution, the voter must necessarily know what the constitution currently provides in addition to what it would provide if the amendment were adopted. *Id.* at 571, 145 A.3d at 1154. Respectfully, this position would carry some force if Article XI, Section 1 provided that the "change to the constitutional provision" must be presented to the qualified electorate. However, Article XI, Section 1 states that the "amendment" must be presented to the qualified electorate, which, as demonstrated *infra*, the Secretary has done by setting forth the language of the proposed constitutional amendment. Thus, literal compliance with Article XI, Section 1 has been achieved.

Secretary of the Commonwealth with approval of the Attorney General"). Accordingly, the General Assembly afforded the Secretary the discretion to determine the wording of a proposed constitutional amendment ballot question with the Attorney General's approval, and indeed, no party asserts that the Secretary was not the proper wordsmith.

While the forgoing provisions place no explicit requirements on the Secretary's phrasing of the ballot question and, thus, give the Secretary broad authority to formulate questions to appear on the ballot, this Court has held that the Secretary's discretion in phrasing the ballot question is not unfettered. In this regard, we have indicated that a ballot question must fairly, accurately, and clearly apprise the voter of the question or issue on which the electorate must vote. *Stander*, 250 A.2d at 480.[7] Generally, judicial interference with a question posed to voters is warranted only where "the form of the ballot is so lacking in conformity with the law and so confusing that the voters cannot intelligently express their intentions." *Oncken v. Ewing*, 336 Pa. 43, 8 A.2d 402, 404 (1939) (refusing to nullify results of a voter referendum where the form of the ballot question did not meet technical dictates of the governing statute, but nonetheless sufficiently informed voters of the question).

Requiring such a high burden to invoke judicial interference with the Secretary's phrasing of a proposed constitutional amendment ballot question is consistent with the doctrine of separation of powers, which dictates that each branch of

7. In his opinion, Justice Wecht questions whether *Stander* applies here. Specifically, he points to the fact that the constitutional amendment at issue in *Stander* arose from a constitutional convention, rather than through the procedure provided by Article XI, Section 1 utilized in the instant case. Respectfully, we believe Justice Wecht's concern raises a distinction without a difference. The question in *Stander* was whether a ballot question asking voters to approve a proposed constitutional amendment contained sufficient information. Because this case presents the same issue, *Stander* is controlling and no party disputes its applicability. The fact that the General Assembly may use different processes to arrive at its decision to propose a constitutional amendment is irrelevant to how we review whether the ballot question provides the voters with sufficient information on which to consider its adoption.

government give due deference to the actions and authority of its sister branches. As the judiciary is the branch entrusted with interpreting the Constitution, its drafting is left to the other branches of government. Specifically, our founders wisely delegated to the General Assembly the task of determining the manner by which voters decide on, and the ultimate amended wording of, constitutional amendments. The General Assembly, in its wisdom, delegated to the Secretary of the Commonwealth the task of formulating the ballot question, which informs the voters of the legislature's proposed constitutional language. Thus, the question before us is not whether we believe one version of the ballot question is superior to another, nor is it relevant how we would phrase the ballot question if left to our own devices. Instead, our role in the constitutional amendment process is limited to a review of whether the ballot question fairly, accurately and clearly apprises the voter of the question on which the electorate must vote.

This review was elucidated in *Stander*, the only Pennsylvania authority relied upon by Plaintiffs, which, upon close examination, does not support their position. The ballot question challenged in *Stander* was "but a tiny and minuscular statement of the very lengthy provisions of the proposed Judiciary Article V." *Stander*, 250 A.2d at 480. The constitutional amendment at issue therein completely revised Article V relating to the judiciary by both altering existing constitutional language and inserting entirely new provisions. The ballot question submitted to the electorate stated:

JUDICIARY—Ballot Question V: Shall Proposal 7 on the JUDICIARY, adopted by the Constitutional Convention, establishing a unified judicial system, providing directly or through Supreme Court rules, for the qualifications, selection, tenure, removal, discipline and retirement of, and prohibiting certain activities by justices, judges, and justices of the peace, and related matters, be approved?

*Id.*

The *Stander* ballot question did not specifically reference or explain the several substantive changes that would result from

a "yes" vote, including that a retirement age of 70 was being imposed on jurists for the first time. More significantly, the ballot question did not set forth the existing constitutional language of those provisions that were to be amended or reference the particular effects resulting from the amendment. Nonetheless, our Court upheld the ballot question and determined that it "fairly, accurately and clearly apprize[d] the voter of the question or issue to be voted on." *Id.*

Here, the proposed constitutional amendment would require members of the judiciary to retire at age 75. The ballot question, as drafted by the Secretary, asks voters the identical inquiry, *i.e.,* whether they wish to amend the Constitution to require members of the judiciary to retire at age 75. Because the Secretary's framing of the ballot question clearly conveyed the proposed constitutional amendment to the electorate, we find that this question satisfies the dictates of *Stander.* We acknowledge that adopting Plaintiffs' proposed new rule and requiring the Secretary to place the existing constitutional language in the ballot question itself would render the particular ballot question more informative. Significantly, however, rejection of such a rule does not render the ballot question unlawful.[8]

8. In fact, ballot questions have been presented to voters in this Commonwealth in various forms, some of which include reference to existing constitutional language and some of which do not. *See e.g. Bergdoll v. Commonwealth,* 858 A.2d 185, 190 (Pa.Cmwlth.Ct.2004), *aff'd,* 583 Pa. 44, 874 A.2d 1148 (2005) (examining the following ballot question, "Shall the Pennsylvania Constitution be amended to provide that a person accused of a crime has the right to be 'confronted with the witnesses against him,' instead of the right to 'meet the witnesses face to face'?"); Ballot Question 3, November 1997, regarding Article VII, section 14, providing, "Shall the Pennsylvania Constitution be amended to require the enactment of legislation permitting absentee voting by qualified electors who at the time of an election may be absent from the municipality where they reside because their duties, occupation or business require them to be elsewhere, which would change the current law permitting absentee voting by such qualified electors only when they are absent from the entire county where they reside?"; *but see Pennsylvania Prison Soc. v. Commonwealth,* 565 Pa. 526, 776 A.2d 971, 974 (2001) (upholding a ballot question asking, "Shall the Pennsylvania Constitution be amended to require a unanimous recommendation of the Board of Pardons before the Governor can pardon or commute the sentence of an individual sentenced in a

Plaintiffs would have us require the Secretary, when formulating a ballot question, to explain the effect of the proposed amendment only when a current constitutional provision is being altered, but not when an entirely new provision is being added.[9] We find no support for this bifurcated approach as the law of this Commonwealth will be changed regardless of whether a new provision is added or an existing provision is altered. Instead, pursuant to Pennsylvania's constitutional and statutory procedures for amending the constitution, the purpose, limitations, and effects that the proposed constitutional amendment has on Pennsylvania citizens must appear in the Plain English Statement prepared by the Attorney General.

Section 201.1 of the Election Code, 25 P.S. § 2621.1, entitled "Explanation of ballot question," provides that "[w]henever a proposed constitutional amendment or other State-wide ballot question shall be submitted to the electors of the Commonwealth in referendum, the Attorney General shall prepare a statement in plain English which indicates the purpose, limita-

criminal case to death or life imprisonment, to require only a majority vote of the Senate to approve the Governor's appointments to the Board, and to substitute a crime victim for an attorney and a corrections expert for a penologist as Board members?", without referencing the existing requirement that the recommendation be made by only a majority of the Board of Pardons); *Grimaud v. Commonwealth,* 581 Pa. 398, 865 A.2d 835, 841 (2005) (upholding a ballot question inquiring, "Shall the Pennsylvania Constitution be amended to disallow bail when the proof is evident or presumption great that the accused committed an offense for which the maximum penalty is life imprisonment or that no condition or combination of conditions other than imprisonment of the accused will reasonably assure the safety of any person and the community?", without reference to the then-current constitutional provision, which disallowed bail only for capital offenders).

9. The presumption underlying Plaintiffs' lawsuit is that the average voter in the Commonwealth will not comprehend the effect of the proposed ballot question as phrased because voters will be unaware of the current mandatory judicial retirement age of 70 and will instead assume that they are being asked to create one. This general presumption—that voters do not understand the import of their votes—has historically been rejected. *See Stander,* 250 A.2d at 480 ("In a Republican or Democratic form of Government, a similar contention is made after almost any election—the people didn't know or did not understand what (or whom) they were really voting for. This generalization has never been proved and will not be assumed by us.").

tions and effects of the ballot question on the people of the Commonwealth." This provision further requires the Secretary to include the Plain English Statement in the publication of the proposed constitutional amendment and to certify for publication the statement to county board of elections, who shall require at least three copies of such statement to be published in or about each polling place. *Id.*

In this case, the Attorney General's Plain English Statement explains the purpose and effect of the constitutional amendment as follows:

> The purpose of the ballot question is to amend the Pennsylvania Constitution to require that justices, judges, and justices of the peace (known as magisterial district judges) be retired on the last day of the calendar year in which they attain the age of 75 years.

> Presently, the Pennsylvania Constitution provides that justices, judges and justices of the peace be retired on the last day of the calendar year in which they attain the age of 70 years. Justices of the peace are currently referred to as magisterial district judges. . . .

> The effect of the ballot question would be to allow all justices, judges and magisterial district judges to remain in office until the last day of the calendar year in which they attain the age of 75 years. This would permit all justices, judges, and magisterial district judges to serve an additional five years beyond the current required retirement age.

The fact that Pennsylvania currently has a mandatory judicial retirement age of 70, and that it will be increased to 75 if voters adopt the proposed amendment, speaks to the effect of the proposed amendment. If we were to adopt Plaintiffs' position and require that the Secretary include the purpose and effect of the constitutional amendment in the ballot question itself, not only would we infringe upon the legislature's constitutional prerogative, but we would also render superfluous the Plain English Statement required by Section 201.1 of the Election Code, placed in every advertisement of the proposed constitutional amendment and in every polling facili-

ty. Instead, we conclude that the ballot question as worded by the Secretary, in conjunction with the Attorney General's Plain English Statement, ensures that voters will receive all the information that they need to make an informed choice: the proposed constitutional language in the ballot question, and the purpose and effect of such language in the Plain English Statement. We find nothing in this construct to be unfair or misleading.

Finally, as noted, Plaintiffs' reliance on cases from other jurisdictions is misplaced and does not warrant a contrary result. The *Lane* case, decided by the Idaho Supreme Court in 1929, cited by Plaintiffs is distinguishable. In *Lane*, the court, in striking the ballot question, determined that the language used in the ballot question was contrary to the amendment proposed by the state legislature, rendering it impermissibly misleading to voters. Specifically, the proposed amendment sought to extend the term of the executive branch; yet, the question posed asked whether the term of the executive should be limited. The *Lane* court concluded that this wording was clearly deceiving to the electorate as the question explicitly stated the opposite of the proposed amendment. Here, no such deception has occurred. The question framed by the Secretary simply reflects the exact language that will result from the proposed amendment. There is no language explicitly stating the opposite result of the proposed amendment as in *Lane*, *e.g.*, should a judge's term be *limited* to 75 years, which would be impermissibly misleading under the logic of *Lane*.

Likewise, the Florida cases cited by Plaintiffs are distinct as Florida required, by statute, that an explanatory statement be included in the ballot question itself. However, as stated, no such requirement exists pursuant to our constitution or statutory scheme, and it would be improper for this Court to rewrite the Election Code to include such a provision.

Neither Plaintiffs nor the Justices who support their position have cited any authority to conclude that a ballot question is misleading where it does not explain the effect of the proposed amendment, thereby affording this Court the right

to interfere with the submission of the challenged ballot question to the qualified electors of Pennsylvania at the time and in the manner prescribed by the General Assembly. Unshackled by the constitutional restraints on our judicial branch of government, we may well embrace the framing of the ballot question as suggested by Plaintiffs for the cogent policy reasons espoused by Justice Todd in her opinion. However, we cannot ignore that our ability to grant relief is cabined by adherence to our own constitutional limitations. As the ballot question as framed by the Secretary is free of legal impediment, it is not for this Court to alter it or, as suggested by the dissent, to remove it from the electorate's consideration. To do so would deny the citizens of this Commonwealth the very rights that Plaintiffs' action purports to protect.

It is for these reasons that we would grant the application for summary relief filed by the Secretary, deny the application for summary relief filed by Plaintiffs, and dismiss Plaintiffs' complaint with prejudice.

Chief Justice SAYLOR did not participate in the consideration or decision of this matter.

Justices DONOHUE and MUNDY join this opinion.

Justice TODD, in support of granting plaintiffs' application for summary relief and denying defendant's application for summary relief.

The Pennsylvania Constitution is the fundamental law of our Commonwealth, and, in considering matters relating to its amendment, courts must exercise the utmost care to safeguard the rights of the people—especially their right to be presented with a ballot question written in language which fully and clearly apprises them of the fundamental effect of their vote on the proposed constitutional amendment. In everyday human interaction, in the arts and literature, as well as in legal documents, statutes, and constitutional provisions which govern our day-to-day affairs, there is a categorical difference between the act of creating something entirely new

and altering something which already exists. Language which suggests the former while, in actuality, doing the latter is, at the very least, misleading, and, at its worst, constitutes a ruse. The proposed ballot question before us employs language which can only be reasonably interpreted as asking the voters to approve a constitutional amendment which would institute a mandatory judicial retirement age for the first time, when, in actuality, the proposed amendment would alter the already existing mandatory retirement age by extending it for an additional five years. As a result, in our view, the ballot question, as presently phrased, is inherently misleading and falls well short of meeting the exacting standard which all ballot questions for the adoption of constitutional amendments must meet. Thus, we would grant Plaintiffs relief and permanently enjoin the Secretary of the Commonwealth from placing on the ballot the language as set forth in H.R. 783 of 2016.

A mandatory retirement age for Pennsylvania judges has been a part of our organic charter of governance for almost 50 years, having first been incorporated by Article V, Section 16(b) of the 1968 Constitution, which was adopted by constitutional convention in March 1968, and approved by the people in April of that year. That provision stated: "Justices, judges and justices of the peace shall be retired upon attaining the age of seventy years." Pa. Const. art. V, § 16(b) (1968). In 2001, the voters were asked to approve a proposed constitutional amendment which permitted "Justices, judges, and justices of the peace" to "be retired on the last day of the calendar year in which they attain the age of 70 years." Pa. Const. art. V, § 16(b) (2001). Notably, the ballot question presented to the people in the May primary of that year explicitly acknowledged the existing requirement of Article V, Section 16(b) as to the day of the year on which mandatory judicial retirement was triggered, thereby giving context to the voters and allowing them to compare the proposed change to the extant constitutional requirement during the process of casting their vote.[1] This ballot question stated:

1. As noted by Plaintiffs, there have been four other instances since 1979 in which the Secretary of the Commonwealth has prepared ballot

Shall the Constitution of Pennsylvania be amended to provide that justices of the Supreme Court, judges and justices of the peace shall be retired on the last day of the calendar year in which they attain the age of 70 years, *rather than on the day they attain the age of 70?*

questions on proposed amendments altering existing constitutional provisions, which referred in some manner to how the requirements of the existing constitutional provisions would be changed by the amendments:

1. **Ballot Question 1, November 1979:**
   Shall Article V, section 3, and section 13, subsection b, and the Schedule to Article V, section 11 of the Pennsylvania Constitution be amended to permit an increase in the number of judges of the Superior Court from its present number of seven, make changes relating to initial terms of additional judges and further provide for the selection of the president judge of the Superior Court?

2. **Ballot Question 2, November 1997, regarding Article IV, section 9:**
   Shall the Pennsylvania Constitution be amended to require a unanimous recommendation of the board of pardons before the Governor can pardon or commute the sentence of an individual sentenced in a criminal case to death or life imprisonment, to require only a majority vote of the Senate to approve the Governor's appointments to the board, and to substitute a crime victim for an attorney and a corrections expert for a penologist as board members?

3. **Ballot Question 3, November 1997, regarding Article VII, section 14:**
   Shall the Pennsylvania Constitution be amended to require the enactment of legislation permitting absentee voting by qualified electors who at the time of an election may be absent from the municipality where they reside because their duties, occupation or business require them to be elsewhere, which would change the current law permitting absentee voting by such qualified electors only when they are absent from the entire county where they reside?

4. **Ballot Question 1, November 2003, regarding Article I, section 9:**
   Shall the Pennsylvania Constitution be amended to provide that a person accused of a crime has the right to be "confronted with the witnesses against him," instead of the right to "meet the witnesses face to face"?

*Ballot Questions and Proposed Amendments to The Pennsylvania Constitution 1958–2006,* Joint State Government Commission (May 2007), at 34, 50–51, 55 (hereinafter *"Ballot Questions"*), Exhibit A to Plaintiffs' Complaint for Declaratory and Injunctive Relief, filed 7/21/16 (alterations omitted).

*Ballot Questions* at 53 (emphasis added).[2]

The genesis of the instant litigation was the passage by the General Assembly on October 22, 2013 of H.B. 79, which proposed a constitutional amendment increasing the mandatory judicial retirement age from 70 to 75 years of age. The text of the proposed amendment, which, in accord with standard legislative practice,[3] includes the existing constitutional provision being deleted by the amendment enclosed in brackets, and the replacement provision added by the amendment underlined, states: "Justices, judges and justices of the peace shall be retired on the last day of the calendar year in which they attain the age of [70] 75 years." H.B. 79 of 2013, Exhibit B to Plaintiffs' Complaint for Declaratory and Injunctive Relief. Following the passage of this resolution, in accordance with the requirements of Article XI, Section 1 of the Pennsylvania Constitution, the Secretary of the Commonwealth ("Secretary")[4] published notice of this proposed amendment.

Thereafter, during the next legislative session in 2015, the General Assembly enacted H.B. 90 on November 22 of that year which contained the same proposed amendment set forth in H.B. 79 and required the Secretary to "comply with the advertising requirements of Article XI, Section 1," and to "submit this proposed constitutional amendment to the qualified electors of this Commonwealth at the first primary, general or municipal election which meets the requirements of

2. Although the 2001 amendment was approved by the voters, subsequent legislative efforts to alter the mandatory retirement age provision stalled. In 2010, a resolution was introduced in the House of Representatives proposing an amendment to completely abolish the mandatory judicial retirement age, H.B. 2657; however, it died in committee. In 2012, a proposed amendment was introduced in the House, H.B. 2129, to raise the mandatory judicial retirement age from 70 to 75 years of age, and it also failed to be voted out of the committee to which it referred.

3. *See Pennsylvanians Against Gambling Expansion v. City of Philadelphia,* 583 Pa. 275, 877 A.2d 383, 412 (2005) (discussing the "well-known, uniform practice, long existent, of legislative draftsmen ... to place in brackets all parts of an existing law intended to be abrogated" by legislation (quoting *Commonwealth v. Hallberg,* 374 Pa. 554, 97 A.2d 849, 851–52 (1953) (internal quotation marks omitted))).

4. The Secretary at that time was Carol Aichele.

and is in conformance with section 1 of Article XI of the Constitution of Pennsylvania and which occurs at least three months after the proposed constitutional amendment is passed by the General Assembly." H.B. 90 of 2015, Exhibit D to Plaintiffs' Complaint for Declaratory and Injunctive Relief.

The Secretary, pursuant to the requirements of the Election Code,[5] formulated the following question regarding this proposed amendment to appear on the April 26, 2016 primary election ballot, which was notably consistent with the manner in which the referenced 2001 ballot question was presented to the voters:

> Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges and justices of the peace (known as magisterial district judges) be retired on the last day of the calendar year in which they attain the age of 75 years, *instead of the current requirement that they be retired on the last day of the calendar year in which they attain the age of 70?*

Public Notice of Proposed Amendment, Exhibit F to Plaintiffs' Complaint for Declaratory and Injunctive Relief (emphasis added). This ballot question was advertised as required by Article XI, Section 1, and ballots were prepared by local election officials throughout the Commonwealth for the April 26, 2016 primary election using this language.

Although all necessary steps had been taken to present the ballot question to the voters at this year's primary election, on March 6, 2016, the Pennsylvania Senate Majority Caucus, Senate President Pro Tempore Joseph Scarnati, and Senate Majority Leader Jacob Corman ("Senators") filed an Emergency Application for Extraordinary Relief with our Court requesting that we strike certain phrases from the ballot question formulated by the Secretary, in the following manner:

---

**5.** *See* 25 P.S. § 2621(c) (mandating that the Secretary "certify to county boards of elections for primaries and elections ... the form and wording of constitutional amendments ... to be submitted to the electors"); *id.* § 2755 ("proposed constitutional amendments shall be printed on the ballots or ballot labels in brief form to be determined by the Secretary").

Shall the Pennsylvania Constitution be amended to require that justices ~~of the Supreme Court,~~ judges and justices of the peace (~~known as magisterial district judges~~) be retired on the last day of the calendar year in which they attain the age of 75 years[.], ~~instead of the current requirement that they be retired on the last day of the calendar year in which they attain the age of 70?~~

Emergency Application for Extraordinary Relief at 29 MM 2016, filed 3/6/16, Exhibit G to Plaintiffs' Complaint for Declaratory and Injunctive Relief, at 1. They argued that the original terms and phrases which they sought to strike were "confusing, distracting, and misleading to electors," inconsistent with the text of the amendment which they had passed twice, and "nothing more than superfluous and gratuitous commentary, which is more appropriately addressed in the Plain English Statement of [the] Office of Attorney General that accompanies the Ballot Question." *Id.* at 1–2.

Of particular relevance to the instant matter, on March 11, 2016, the Secretary filed an answer to this application contending that it should be denied; he asserted that, by deleting the phrase "instead of the current requirement that they be retired on the last day of the calendar year in which they attain the age of 70," this revision:

> *would actually deprive voters of relevant information* on the ballot itself regarding the mandatory judicial retirement age requirement as it currently exists in the Pennsylvania Constitution.

Answer of Secretary of the Commonwealth Pedro A. Cortes at 29 MM 2016, Exhibit H to Plaintiffs' Complaint for Declaratory and Injunctive Relief, at 16 (emphasis added). Elaborating, the Secretary averred:

> This is not an amendment where new language is merely being added to the Constitution. For this proposed amendment, the existing text would actually change.... Amending the Ballot Question in the manner suggested by Applicants would likely leave the voter wondering what the current requirement is—or worse yet, leave the voter with the impression that there is currently no requirement at all.

*Id.* at 17. We note that the Secretary has not, in any subsequent filing with our Court, expressly repudiated these arguments, and, indeed, in his brief filed with our Court in the instant matter, does not acknowledge that he made these arguments even though he currently takes the opposite position.[6]

Our Court denied this application, as well as a subsequent request via stipulation among the Senators, the Attorney General, and the Secretary[7] for our Court to order this same proposed alteration in the language of the ballot question and for its placement on the November ballot. On April 6, 2016—15 days before the primary election—the General Assembly passed H.R. 783 of 2016. This resolution ordered the county boards of elections to remove "to the extent possible" the Secretary's proposed ballot question, barred the Secretary from tallying votes on the amendment, and specifically directed the Secretary to place on the November ballot the following ballot question using nearly the identical language the Senators proffered in March:

> Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges and magisterial district judges be retired on the last day of the calendar year in which they attain the age of 75 years?

H.R. 783, Exhibit J to Plaintiffs' Complaint for Declaratory and Injunctive Relief. Thereafter, Plaintiffs brought the instant challenge in the Commonwealth Court on July 21, 2016, and, on that same day, requested that our Court exercise our extraordinary jurisdiction over the matter; we did so on July 27, 2016.

From our perspective, the language set forth in H.R. 783 suffers from precisely the same infirmity identified by the

6. The Office of Attorney General represented the Secretary in the March litigation, whereas the Chief Counsel of the Department of State represents the Secretary currently.

7. The Secretary presently contends that he and the Office of the Attorney General joined in this stipulation "in order to bring certainty to a process that had been rendered uncertain by the Application for Extraordinary Relief." Appellee's Brief at 5–6 n. 3.

Secretary when it was earlier presented to our Court—namely that, by omitting any indication of an already existing mandatory retirement age for judges, it hides the fact that the voter is being asked to, in actuality, *raise* the current retirement age, and not, as the language suggests, to *impose* a mandatory retirement age for the first time. This language is inherently misleading and contravenes the fundamental requirement which every ballot question seeking voter approval of an amendment to the Constitution must meet: that "the question as stated on the ballot fairly, accurately and clearly apprize[s] the voter of the question or issue to be voted on." *Stander v. Kelly*, 433 Pa. 406, 250 A.2d 474, 480 (1969).[8]

By omitting any indication that there is a current mandatory retirement age in the Constitution, the plain import of the unadorned ballot question language is that a brand new provision requiring all judges of the Commonwealth to retire at age 75 is being added. Yet, the act of adding a wholly new

8. As acknowledged in Justice Baer's Opinion at 550–51, 145 A.3d at 1141–42, *Stander* is the governing test to assess whether the content and meaning of the wording of a ballot question is adequate to enable the voter to understand the true nature of the changes to the Constitution which a proposed amendment will effectuate. In that regard, we view Justice Baer's reliance on *Oncken v. Ewing*, 336 Pa. 43, 8 A.2d 402 (1939), to be misplaced. Unlike *Stander*, in *Oncken*, we were not addressing the *constitutional* requirements for the content of a ballot question. Rather, our Court was considering the discrete issue of whether the results of an election should be invalidated because the manner of printing of the ballot itself failed to precisely comport with the *statutory* requirements of the Election Code. The alleged fatal flaw in the ballot in that case, which the challenger did not raise prior to the election under the procedures afforded by the Election Code, was that it did not, as required by that Code, contain the words "yes" or "no" next to the question on which the voter was asked to place an "X", even though it instructed the voter to indicate his or her choice by placing an "X" directly opposite the words "For City Charter" if they were in favor of its adoption, or "Against City Charter" if they were opposed to its enactment. As the issue in that case turned on the question of whether a technical defect in the physical appearance of the ballot itself was misleading to the voter and, thus, interfered with his statutory right to make a free choice, it has little application here. Moreover, *Stander* makes no reference to *Oncken*, and our research discloses no instance where *Oncken* has been used by our Court to assess whether the structure and content of the language of a ballot question involving a proposed constitutional amendment was misleading; hence, we consider it to be inapplicable to the resolution of the instant case.

564

constitutional provision is fundamentally different than the act of altering an existing provision. The addition of a constitutional provision can be considered largely on its terms. By contrast, changing an existing provision requires consideration of the constitutional framework within which the government already functions in some respect. Consequently, to fully assess the wisdom of a change to that framework, the people must be able to evaluate the effect of a proposed change against the Constitution's present design.

The omission of any indication in the proposed ballot question that there is a current mandatory retirement provision quite simply deprives the voter of the opportunity to make this necessary comparison, as it does not allow the voter to assess whether the 75 year age limit set forth in the proposed amendment is more or less preferable than the existing requirement of age 70. Instead, it invites the voter to consider whether a retirement age of 75 for jurists is desirable as compared with no mandatory retirement age at all. As Plaintiffs have argued, this could have deleterious consequences for all voters:

> Voters in favor of restricting the tenure of state court jurists but who are unaware that the Pennsylvania Constitution currently requires them to retire at age 70 will be misled into voting "yes" on the ballot question, when they would in fact oppose the measure if fully informed. At the same time, voters who oppose limiting the tenure of judges but who are unaware of the current constitutionally-mandated judicial retirement age will be misled into voting "no" on the ballot question, when they would in fact favor the measure if they understood that a "no" vote would mean judges must retire five years earlier than the amendment proposes.

Plaintiffs' Brief at 25–26. Indeed, as the Secretary cogently noted in his original response to this language when it was first proposed, this language will "deprive voters of relevant information on the ballot itself regarding the mandatory judicial retirement age requirement as it currently exists in the Pennsylvania Constitution." Answer of Secretary of the Com-

monwealth Pedro A. Cortes at 29 MM 2016, at 16; *see also id.* at 17 ("Amending the Ballot Question in the manner suggested ... would likely leave the voter wondering what the current requirement is—or worse yet, leave the voter with the impression that there is currently no requirement at all.").[9]  Further, the language of the ballot question, by omitting any indication that it is amending a previously existing mandatory retirement age, is incongruous with the text of the legislative resolution, which clearly indicates, by bracketing and underlining, that it is changing a pre-existing retirement age.  Because, in our view, the ballot question is inherently misleading for all of these reasons, it does not "fairly, accurately and clearly apprize the voter of the question or issue to be voted on." *Stander,* 250 A.2d at 480.[10]

Justice Baer has posited that Section 201.1 of the Election Code—which tasks the Attorney General with preparing "a statement in plain English which indicates the purpose, limitations and effects of the ballot question on the people of the Commonwealth," and which requires the publication of the statement in advertisements and the posting of three copies of the statement "in or about the voting room outside the enclosed space"[11]—in conjunction with the wording of the ballot question, "ensures that voters will receive all the information that they need to make an informed choice: the proposed constitutional language in the ballot question, and the purpose

9.  These assertions by the Secretary regarding the effect the ballot language would have on the electorate undermine Justice Baer's assertion that Plaintiffs' similar claim is somehow illegitimate.  *See* Justice Baer's Opinion at 553 n. 9, 145 A.3d at 1143 n. 9.

10.  Asserting that no context is required, Justice Baer offers that "ballot questions have been presented to voters in this Commonwealth in various forms, some of which include reference to existing constitutional language and some of which do not." *See* Justice Baer's Opinion at 552–53 n. 8, 145 A.3d at 1142–43 n. 8 (discussing *Bergdoll v. Commonwealth,* 858 A.2d 185 (Pa.Cmwlth.2004), *Pennsylvania Prison Society v. Commonwealth,* 565 Pa. 526, 776 A.2d 971 (2001), and *Grimaud v. Commonwealth,* 581 Pa. 398, 865 A.2d 835 (2005)).  Critically, none of the cases Justice Baer references involved constitutional challenges to the *wording* of ballot questions on proposed amendments;  thus, they have no bearing on the resolution of the instant matter.

11.  25 P.S. § 2621.1.

and effect of such language in the Plain English Statement." Justice Baer's Opinion at 555, 145 A.3d at 1144. Respectfully, we disagree.

As our Court indicated in *Stander,* "[t]he first and most important question ... is: Does the question *as stated on the ballot* fairly, accurately and clearly apprize the voter of the question or issue to be voted on?" *Stander,* 250 A.2d at 480 (emphasis added). It was only *after* our Court answered this question in the affirmative in *Stander* that we went on to discuss the other means, in addition to the ballot question, by which the legislature required the electorate to be informed of the new provisions of Article V of the Constitution which it was being asked to add, in their entirety, to our Constitution.[12] Critically, then, we read *Stander's* requirement that the ballot question must "fairly, accurately and clearly apprize the voter of the question or issue to be voted on" as precluding the conclusion that a misleading ballot question can be cured by the provision of notice to the voter by other means such as posting or publication of the Plain English Statement.

Requiring strict adherence to *Stander's* requirement is, in our view, the only way to ensure that every voter will be provided with the information essential to an informed choice about whether to approve a constitutional amendment. Although the Plain English Statement is posted somewhere outside of the "enclosed space" where the voter makes his or her final decision, this statement does not appear on the ballot itself, nor does the voter otherwise have access to the posted statement while he or she is reviewing the ballot during the process of voting. Likewise, given the unfortunate reality of declining newspaper readership, and the fact that the average voter may be faced with overcrowded polling places which force the voter to cast his or her vote under harried circumstances, it simply cannot be presumed that each and every voter will have encountered this Plain English Statement

12. These requirements, unlike the requirements set forth in the enabling legislation in the instant matter, included a mandate that ten copies of the proposed amendment be distributed to each polling place, and obliged the Secretary to "publish the Constitution showing the changes proposed by the convention in convenient form and send a copy thereof to each elector requesting it." *Stander,* 250 A.2d at 480.

through newspaper advertisement or posting in the outer areas of the polling place as Justice Baer comfortably assumes. *See, e.g., Ex parte Tipton,* 229 S.C. 471, 93 S.E.2d 640, 644 (1956) ("It is the ballot, not the posted notice, with which the voter comes into direct contact. The reasonable assumption is that he reads the question proposed on the ballot, and that his vote is cast upon his consideration of the question as so worded.").

Lastly, we reject Justice Baer's characterization of Plaintiffs' challenge as founded on nothing more than that the proposed language could merely be "more informative." Justice Baer's Opinion at 552, 145 A.3d at 1142. We do not consider *Stander* to require, in a ballot question, a verbatim recitation of the constitutional provisions being changed, or any particular formulation; rather, it simply requires that the Secretary utilize language in the ballot question that "fairly, completely and accurately" conveys the essential impact of the proposed changes on the relevant constitutional provisions. Most fundamentally, this requires conveying whether constitutional language is being wholly added, or modified. Enforcing this requirement is not a matter of this Court mandating a particular linguistic preference, or being "more informative," but fulfilling our elemental duty to uphold the Constitution.

In sum, then, we would grant Plaintiffs' requested relief and enter an order permanently enjoining the Secretary of the Commonwealth from placing on the ballot the language set forth in H.R. 783 of 2016.[13]

13. We find no merit to the Secretary's additional assertions that Plaintiffs' complaint raises a non-justiciable question, or that it is barred by the doctrine of laches. Specifically with regard to laches, our Court has heretofore indicated that, because of the paramount importance of the manner in which a proposed constitutional amendment is presented to the people for consideration, the doctrine of laches was not a bar to our Court's consideration of such matters. *See Tausig v. Lawrence,* 328 Pa. 408, 197 A. 235, 239 (1938) ("Because of the intense importance to the people of the commonwealth of matters affecting the amendment of their fundamental law, the doctrine of laches cannot be invoked to prevent the determination of the propriety of the submission of an amendment."); *see also Sprague v. Casey,* 520 Pa. 38, 550 A.2d 184, 188 (1988) (rejecting reliance on laches defense in constitutional challenge to scheduling of judicial election in non-municipal election year).

In closing, although the actions of the legislature and the Secretary are at the core of this legal challenge, it bears emphasis that this Court's ultimate focus is on safeguarding the rights of the people. In that regard, we are reminded of the profound observation by Justice Louis Brandeis that "[t]he most important office ... is that of private citizen." Alpheus Thomas Mason, *Brandeis: A Free Man's Life* 122 (1946). At no time do the duties of this office attain greater importance than when a citizen contemplates amending the document that establishes the fundamental relationship between the citizen and his or her government. Given the gravity of this act, we should heed the admonition that "[n]o method of amendment can be tolerated which does not provide the electorate adequate opportunity to be fully advised of proposed changes" to our Constitution. *Commonwealth ex rel. Schnader v. Beamish*, 309 Pa. 510, 164 A. 615, 616–17 (1932). When the people amend our founding charter, they should do so with clear and keen eyes. Because, in our view, the proposed ballot question does not afford the people that opportunity, we would enjoin its placement on the ballot.

Justice DOUGHERTY joins this opinion and Justice WECHT joins in part.

Justice WECHT, in support of granting plaintiffs' application for summary relief and denying defendant's application for summary relief.

The Pennsylvania Constitution reserves to the people "an inalienable and indefeasible right to alter, reform or abolish their government in such manner as they may think proper." PA. CONST. art. I, § 2. Consistent therewith, Article XI, Section 1 instructs that all proposed constitutional amendments "shall be submitted to the qualified electors of the State." PA. CONST. art. XI, § 1. In matters concerning revisions of our charter, this Court must exercise "the most rigid care," and we demand "[n]othing short of a literal compliance" with the specific measures set forth in Article XI. *Commonwealth ex rel. Schnader v. Beamish*, 309 Pa. 510, 164 A. 615, 616–17 (1932); *Kremer v. Grant*, 529 Pa. 602, 606 A.2d 433, 438 (1992).

For the many reasons that Justice Todd articulates in her thorough and well-reasoned opinion, I too believe that the challenged ballot question fails to satisfy this stringent standard. I write separately to express my skepticism that the test this Court applied in *Stander v. Kelley*, 433 Pa. 406, 250 A.2d 474, 480 (1969) controls here.

Unlike the measure before us, the amendments at issue in *Stander* were the product of a Constitutional Convention. *See id.* at 479 ("These new amendments to or revision[s] of the Constitution were not adopted pursuant to the provisions of Article XI of the Constitution of 1874, but were adopted pursuant to and through a different manner of amendment— the Constitutional Convention.").[1] Nonetheless, my learned colleagues appear to assume that, to pass constitutional muster under Article XI, Section 1, a ballot question need only "fairly, accurately and clearly apprize [*sic*] the voter of the question or issue to be voted on." *Stander*, 250 A.2d at 480; *see* Justice Baer's Opinion at 551, 145 A.3d at 1142 ("[O]ur role in the constitutional amendment process is limited to a review of whether the ballot question fairly, accurately and clearly apprises the voter of the question on which the electorate must vote."); Justice Todd's Opinion at 563, n. 8, 145 A.3d at 1149, n. 8 ("*Stander* is the governing test to assess whether the content and meaning of the wording of a ballot question is adequate[.]").

Because our Constitution explicitly defines the amendment process that was used in this case, I would begin my analysis not with *Stander*, but rather with the text of Article XI, Section 1 itself:

Amendments to this Constitution may be proposed in the Senate or House of Representatives; and if the same shall be agreed to by a majority of the members elected to each House, such proposed amendment or amendments shall be entered on their journals with the yeas and nays taken thereon, and the Secretary of the Commonwealth shall cause the same to be published three months before the

1. It is well-established that the Pennsylvania Constitution may be amended either by Convention or by the procedure specified in Article XI, Section 1. *Stander*, 250 A.2d at 480.

next general election, in at least two newspapers in every county in which such newspapers shall be published; and if, in the General Assembly next afterwards chosen, such proposed amendment or amendments shall be agreed to by a majority of the members elected to each House, the Secretary of the Commonwealth shall cause the same again to be published in the manner aforesaid; and such proposed amendment or amendments shall be submitted to the qualified electors of the State in such manner, and at such time at least three months after being so agreed to by the two Houses, as the General Assembly shall prescribe; and, if such amendment or amendments shall be approved by a majority of those voting thereon, such amendment or amendments shall become a part of the Constitution; but no amendment or amendments shall be submitted oftener than once in five years. When two or more amendments shall be submitted they shall be voted upon separately.

PA. CONST. art. XI, § 1.

When we construe a provision of the Pennsylvania Constitution, our "ultimate touchstone is the actual language of the Constitution itself," which "must be interpreted in its popular sense, as understood by the people when they voted on its adoption." *Jubelirer v. Rendell,* 598 Pa. 16, 953 A.2d 514, 528 (2008); *Com. ex rel. Paulinski v. Isaac,* 483 Pa. 467, 397 A.2d 760, 765 (1979) ("Constitutional provisions are not to be read in a strained or technical manner. Rather, they must be given the ordinary, natural interpretation the ratifying voter would give them."). To determine the intent of the ratifying voters, we may consider, *inter alia,* the "text; history (including constitutional convention debates, the address to the people, [and] the circumstances leading to the adoption of the provision); structure; underlying values; and interpretations of other states." *Robinson Twp., Washington Cnty. v. Commonwealth,* 623 Pa. 564, 83 A.3d 901, 944 (2013) (quoting Thomas G. Saylor, Prophylaxis in Modern State Constitutionalism: New Judicial Federalism and the Acknowledged Prophylactic Rule, 59 N.Y.U. ANN. SURV. AM. L. 283, 290–91 (2003) (footnotes and internal quotation marks omitted)).

By its terms, Article XI, Section 1 requires that a "proposed amendment or amendments shall be submitted to the qualified electors of the State." PA. CONST. art. XI, § 1. According to its ordinary meaning, the word "amendment" means "a change made by addition, deletion, or correction." *See* "Amendment," Black's Law Dictionary (10th ed.2014). Article XI requires the electorate to accept or reject the proposed change to the constitution. By definition, in order to do so, a voter necessarily must know two things: (1) what the constitution currently provides and (2) what it would provide if the amendment were adopted. A ballot question that omits the former (as does the one we examine here) falls short of "literal compliance" with Article XI.[2] *Kremer,* 606 A.2d at 438 ("Nothing short of a literal compliance with [Article XI, Section 1] will suffice.").

It is beyond cavil that Article XI, Section 1 is rooted in the principle that the electorate must be informed fully of all proposed constitutional amendments. For example, the provision imposes strict statewide publication requirements. It also provides that discrete amendments must be submitted individually to the voters, a requirement which ensures that only specific and narrow ballot questions will be presented to the people for their approval. *See Pennsylvania Prison Soc. v. Com.,* 565 Pa. 526, 776 A.2d 971, 986–87 (2001) (explaining that the separate-vote requirement "acts as a safeguard to ensure that our citizenry is fully informed of the proposed amendments to the Constitution."); *id.* ("[T]he focus of Article XI, § 1 is clearly upon the voter.").

By contrast, in the Convention context, our Constitution does not explicitly mandate these requirements. Indeed, if the complete revision of Article V at issue in *Stander* had been accomplished through the Article XI process, it almost certainly would have violated the separate-vote requirement. *See Bergdoll v. Kane,* 557 Pa. 72, 731 A.2d 1261, 1270 (1999)

**2.** By contrast, as Justice Todd aptly notes, when a proposed amendment seeks to add to the Constitution an entirely new provision, approval of the post-amendment language is the functional equivalent of approving

(holding that a single ballot question encompassing amendments to both Article I, Section 9 and Article V, Section 10(c) violated the separate-vote requirement).[3]

Given the significant differences between the two lawful methods for amending the Pennsylvania Constitution, I cannot accept as a foregone conclusion the proposition that the *Stander* test controls this case. In any event, regardless of whether our inquiry is limited to considering if "the question as stated on the ballot fairly, accurately and clearly apprize[s] [*sic*] the voter" of the amendment, or whether the text of the Constitution requires a more specific standard (*i.e.*, the voter sees both the "before" and the "after"), I agree fully with Justice Todd that the ballot question before us cannot survive judicial scrutiny.

Accordingly, I would grant Plaintiffs' application for summary relief and deny Defendant's application for summary relief.

---

the revision to the Constitution. *See* Justice Todd's Opinion at 563–64, 145 A.3d at 1150.

3. Opining that I have "raise[d] a distinction without a difference," Justice Baer's opinion relies upon the fact that this Court upheld the ballot question in *Stander* even though it "did not specifically reference or explain the several substantive changes that would result from a 'yes' vote, including that a retirement age of 70 was being imposed on jurists for the first time." Justice Baer's Opinion at 550 n. 7, 551–52, 145 A.3d at 1141 n. 7, 1142. This ignores *Stander's* recognition that it would have been impossible to print on the ballot a comprehensive summary of the proposed Judiciary Article V. *Stander,* 250 A.2d at 480 ("It is equally clear and realistic beyond the peradventure of a doubt that a lengthy summary of the proposed Judiciary Article could not have been printed on an election ballot."). Plainly, this distinction makes all the difference in the world. A non-deceptive and constitutionally-compliant ballot question could readily have been printed here.